UNITED STATES BANKRUPTCY COURT      **Hearing Date:** April __, 2010
EASTERN DISTRICT OF NEW YORK      **Hearing Time:** _____
--------------------------------------------------------X

In Re:                                       Chapter 11

**JURGIELEWICZ DUCK FARM,**          Case No. 8-10-70231-DTE

                               Debtor.
--------------------------------------------------------X

**MOTION FOR ENTRY OF ORDER SCHEDULING EXPEDITED HEARING ON APPROVAL OF BIDDING PROCEDURES (I) APPROVING BIDDING PROCEDURES; (II) AUTHORIZING DEBTOR TO SELL ASSETS OF THE ESTATE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. SECTION 363(b) AND (f), SUBJECT TO CERTAIN ASSUMED ENCUMBRANCES AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE DOROTHY T. EISENBERG,
UNITED STATES BANKRUPTCY JUDGE:

       The debtor, **Jurgielewicz Duck Farm,** (the "Debtor"), by its attorneys **Robinson**

**Brog Leinwand Greene Genovese & Gluck P.C.**, seeks the entry of orders:[1]

         (a)      establishing bidding procedures with respect to the sale of substantially all of the Debtor's assets and scheduling a sale hearing;

         (b)      pursuant to sections 105, 363(b), (f) and (m) and 1146 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to sell, subject to higher and better offers:

---

1 All terms not otherwise defined herein, shall have the meaning ascribed to them in the Asset Purchase Agreement dated November 30, 2009.
{00474209.DOC;1}460686

(i)        the Debtor's assets (the "Assets") as set forth in the Asset Purchase Agreement dated March __, 2010 (the "APA"), free and clear of any liens, claims and encumbrances, except for the assumed encumbrances as defined in the APA to Couak Capital Corp. ("Couak") and South Shore Farm Realty LLC ("SSP" and with Couak, the "Purchasers"), an unrelated/unaffiliated third-party, or such other entity or entities as may submit a higher and better offer for the Assets at the hearing to consider such sale (the "Sale"), approving the APA in connection therewith; and

(ii)       authorizing the Debtor to transfer the Assets;

(c)      determining that the Purchasers, or such entity or entities that is the successful purchaser acted in good faith and are entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code; and

(d)      granting such other and related relief as may be just and appropriate.

In support thereof, the Debtor states:

## JURISDICTION AND VENUE

1.     Jurisdiction of this civil proceeding is vested in the United States District Court for this District pursuant to section 1334 of title 28 of the United States Code.

2.     Venue of this proceeding is proper pursuant to 28 U.S.C. §1409. This is a core proceeding arising under title 11 of the United States Code. *See* 28 U.S.C. § 157(b)(1). The statutory predicates for the relief sought herein include sections 105 and 363 of the Bankruptcy Code.

## THE DEBTOR

**Background.**

{00474209.DOC;1}460686

3.     The Debtor, which was established in 1919, operates a free range duck farm from the premises located at 68 Barnes Road, Moriches, New York.

4.     The Debtor is one of the five major producers of White Peking Ducklings in the country and is the only producer of Free Range Long Island Ducklings in the United States.  It is the largest duck producer on Long Island, NY.   While the Debtor owns the land from which the farm operates, the town and counties of Brookhaven and Suffolk purchased the development rights to the farm land in May 2007.

5.     The Debtor owns several parcels of real property in New York from which it operates its farm and a house located approximately five (5) miles from the main farm.  The Debtor also owns three (3) parcels of property in Ohio.  Each of the parcels of real property is encumbered by a mortgage.  The following are the Debtor's secured creditors[2]: (1) Bellwether LLC holds a claim in the estimated amount of $500,000 which claim is secured on the home located at 7 Widgeon Road, Center Moriches, New York[3]; (2) Cargill Inc. holds a claim in the approximate amount of $331,837.26 which claim is secured on 176 acres of real property located in Wayne, Ohio; (3) First Pioneer Farm Credit, ACA, ("First Pioneer") holds a claim in the amount of $875,913.00 which claim is secured by a mortgage on two (2) parcels of real estate consisting of approximately 37.2 acres of land from which the Debtor operates its farm.  First Pioneer also has a security interest in all of the Debtor's personal property; (4) Kalmbach Feeds

---

2 GMAC is scheduled as a secured creditor in connection with a 2004 Chevy Tahoe owned by the Debtor and Evergreen 9 Corp. is scheduled as a secured creditor in connection with purchase order financing it provided to the Debtor pre-petition.  Neither GMAC nor Evergreen 9 Corp. are secured on any other real or personal property of the Debtor.

3       Benjamin Jurgielewicz, the Debtor's general partner, resides in the home located at 7 Widgeon Road.

Inc. holds a claim in the amount of $373,618.87 which claim is secured on two (2) parcels of real estate consisting of approximately 132 acres of land in Wayne, Ohio; (5) Titmus Enterprises ("Titmus") holds a claim in the approximate amount of $1,101,000 which claim is secured by a mortgage on two (2) parcels of real estate consisting of approximately 14.8 acres of farm land located at Barnes Road, Moriches, New York. Titmus commenced a foreclosure proceeding against the Debtor and obtained a judgment of foreclosure in December 2009, prior to the Petition Date.

6. The balance of the Debtor's other obligations consist of real estate taxes scheduled in the amount of $138,948.94 and filed in the amount of $301,701.12 and unsecured obligations, generally consisting of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, specifically in connection with workers compensation obligations, scheduled in the aggregate amount of $2,837,180.88. The Debtor is also the defendant in various litigations, including litigation regarding the Debtor's compliance with New York State environmental regulations which claim amounts are currently unliquidated.

**Events Leading to the Debtors' Chapter 11 Cases.**

7.      While the Debtor's duck product is in high demand, increased feed and fuel costs negatively impacted the Debtor's cash flow and led to an inability to pay its debts as they came due.  The Debtor was soon unable to obtain credit terms from its feed vendor, which vendor required cash on delivery payments, further limiting the Debtor's cash flow and inhibiting any ability for the Debtor to accumulate sufficient cash to increase its duck production, which would in turn increase its profitability.   Prior to the Petition Date, the Internal Revenue Service imposed a levy against South Shore Packers, Inc., the Debtor's companion case, which levy was executed improperly against the Debtor's vendors, further limiting the Debtor's cash flow.  At that juncture, the Debtor, after consultation with its advisors, determined that a chapter 11 filing was its best strategic alternative and would best serve the interests of its creditors, employees, and customers.

8.      The Debtor and an affiliated corporation, South Shore Packers, Corp., filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on **January 12, 2010** (the "Petition Date").  On January 26, 2010, the Debtor filed its schedules of assets and liabilities, and list of creditors and executory contracts required pursuant to section 521 of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

9.      The Debtor has continued to manage and operate its business pursuant to sections 1107 and 1108 of the Bankruptcy Code, albeit in a limited capacity.  No Committee of unsecured creditors was formed by the Office of the United States Trustee in this case.

## SUMMARY OF RELIEF REQUESTED

10.     This motion seeks approval of the Sale of substantially all of the Debtor's New York Assets to Purchasers, free and clear of any and all claims, liens, encumbrances and other interests, but subject to the claims and interests of First Pioneer, Titmus and real estate taxes (collectively, the "Assumed Encumbrances") The Debtor's principal assets consist of its real property, duck inventory, owned machinery and equipment, automobiles, permits and licenses and receivables ("Assets").

11.     As will be set forth herein, the prompt approval of the bidding procedures and thereafter the sale of substantially all of the Debtor's Assets to Purchasers pursuant to the terms of the APA by and between the Debtor, as seller, and the Purchasers, or such other entity or entities as may submit a higher or better offer for the Assets at the hearing to consider the Sale, is in the best interests of the Debtor, its estate and its creditors and will result in the Debtor realizing maximum value for its Assets.  A copy of the APA is annexed hereto as Exhibit A.  Debtor seeks expedited approval of the bidding procedures set forth herein in order to determine if any higher or better offers for the Assets will come forward. The Debtor is not seeking an expedited hearing on the sale motion, however, the Purchaser's offer is only good if approved by the Court on or before May 14, 2010, therefore, the Debtor seeks expedited approval of the bidding procedures so that it can be determined quickly, while the Debtor has sufficient funds available to maintain its operations as a going concern, if there exists other interested purchasers for the Assets.  Purchaser Couak is the court

approved DIP lender to the Debtor which has funded approximately $95,000 to the Debtor since approval of the DIP credit agreement, and who has committed to funding to the Debtor the aggregate amount of $400,000.

12.     The Debtor respectfully requests that the Court enter an order (i) approving bidding procedures; (ii) scheduling a time for the Sale hearing and thereafter, authorizing the Debtor to sell to the Purchasers, or such other entity or entities as may submit a higher or better offer for the Assets at the hearing to consider the Sale, free and clear of any and all claims, liens, encumbrances and other interests, but subject to the Assumed Encumbrances; and (ii) authorizing the entry into and approving the APA.

## PROPOSED SALE OF ASSETS

13.     Prior to and during the bankruptcy period the Debtor has actively pursued financing and sale opportunities for its business.  The Debtor procured emergency financing from Purchaser Couak pursuant to this Court's order entered on March 8, 2010, however, the Debtor has been unable to stabilize its operations during the bankruptcy period.  The Debtor recognizes that the only way for it to sustain its business is to sell the farm as a going concern.  The Debtor was able to negotiate with Purchasers the sale of its Assets, whereby the Debtor seeks to sell certain of the Assets to the Purchaser Couak in exchange for a full and final release from all of the DIP borrowings in the aggregate amount of $400,000; and sell certain of the Assets to Purchaser SSP in exchange for a cash component of $75,000 in addition to the Purchasers' assumption of the Assumed Encumbrances consisting of the

{00474209.DOC;1}460686

obligations due to First Pioneer, Titmus and all outstanding real estate taxes. The sale of the Debtor's Assets and the continued operation of the farm will ensure the continued employment for certain of the Debtor's employees and continued business with the various vendors and customers serviced by the Debtor's operations. Despite its best efforts to turn its business around, the Debtor has been unable to obtain credit with certain of its vendors and has struggled with continuous cash flow shortfalls pre and post petition. The Debtor has not operated profitably, and recognizes that it is in the best interests of its creditors, employees, vendors, customers, and its estate to seek approval of the Sale of the Assets in order to maximize their value.

14. Absent approval of the Sale as contemplated herein, the Debtor will have no alternative but to cease operations, release its employees and liquidate or abandon its inventory. In this circumstance, in all likelihood the real property would be foreclosed upon, the remaining assets would be sold for a nominal sum, the going concern value of the business would be lost and there would be insufficient funds to satisfy the Debtor's creditors. If the APA is approved, the Debtor will utilize the sale proceeds to pay creditors in accordance with statutory priorities. Debtor will also explore opportunities to sell the property it owns in Ohio and any other assets not contemplated by the APA. The Debtor believes that the terms of the proposed sale will result in it obtaining the maximum value for the Assets.

15. Debtor seeks expedited approval of the bidding procedures at this juncture as it

{00474209.DOC;1}460686

can only sustain its day to day operations for approximately 30 -60 days with the final advance of the DIP loan in the aggregate amount of $400,000.  If the bidding procedures are not approved at an expedited hearing and a sale hearing is not scheduled within the next 30 days, the Debtor will be unable to pay its administrative obligations, including payroll.  The estate would be administratively insolvent thereby resulting in no funds to distribute to creditors.

## THE PURCHASE

16.     The following is a brief summary of certain key provisions of the APA.  The Court and interested parties are respectfully referred to the APA for a full recitation of the terms and conditions of the transaction.  Pursuant to the terms of the APA attached hereto as Exhibit A, Purchaser seeks to purchase the Assets set forth in the APA as follows:

    i.      Equipment

    ii.     Vehicles

    iii.    Accounts Receivable

    iv.     Fixtures and Personal Property;

    v.      Telephone Numbers

    vi.     Operating Permits and Licenses

    vii.    The Barnes Road Property; and

    viii.   The Titmus property

17.     Excluded from the sale are the following assets:

(a) 12 acres of property located at Mccutcheonville Road, Wayne, Ohio;
(b) 44 acres of property located at Fostoria Road, Wayne, Ohio;
(c) 120 acres of property located at Mccutcheonville Road, Wayne, Ohio;
(d) a house located at 7 Widgeon Road, Center Moriches, NY 11934;
(e) 2004 Chevy Tahoe; and
(f) actions and recoveries pursuant to Chapter 5 of the Bankruptcy Code.

18.    The purchase price consists of (i) a release from the obligation to repay Couak

the $400,000 credit facility, (ii) Purchasers' assumption of the Assumed Encumbrances,

consisting of the First Pioneer and Titmus secured obligations and assumption of real estate

taxes related to the Barnes Road Property and the Titmus Property (iii) a cash component of

$75,000 plus (iv) the obligations accruing on or after the Closing Date with respect to the

Assets.  The cash equivalent of the purchase price aggregates $2,753,614.12.

19.    The sale is contingent upon, among other things, bankruptcy court approval in

the Debtor's bankruptcy case.  The sale is also contingent upon obtaining such an order by

May 14, 2010.

20.    The process of negotiating the DIP Credit Agreement and thereafter the

proposed sale, resulting in execution of the APA, has taken place over approximately an 8

week period and required a substantial investment of time and effort by the parties.  The APA

fixes a deadline for the approval to take place by May 14, 2010.  The need to complete the

Sale is therefore time sensitive.

**APPROVAL OF SALE**

21.    Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "the

Debtor, after notice and a hearing, may use, sell or lease, other than in the ordinary course of

{00474209.DOC;1}460686

business, property of the estate".  11 U.S.C. § 363(b)(1).  Inasmuch as the Assets comprise substantially all of the Debtor's New York assets, the proposed Sale is outside the ordinary course of the Debtor's business.

22.    Section 363 does not set forth an express standard for determining whether a sale of property under section 363(b) should be approved; however, courts that have interpreted this section consistently apply an "articulated business judgment" standard.  *See Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (Bankr. 9th Cir. 1988); *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

23.    The Court of Appeals for the Second Circuit first enunciated this standard by stating:

> The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing *a good business reason* to grant such application.

*Lionel*, 722 F.2d at 1070-71 (emphasis added).

24.    Section 363(b) of the Bankruptcy Code does not require that the Court substitute its business judgment for that of the Debtor.  *See, e.g. Ionosphere Clubs*, 100 B.R. at 676

(court will not substitute a hostile witness's business judgment for a debtor's, unless testimony "established that the [debtor] had failed to articulate a sound business justification for its chosen course").  Rather, the Court should ascertain whether a debtor has articulated a valid business justification for the proposed transaction.  This is consistent with "the broad authority to operate the business of the Debtor . . . [which] indicates congressional intent to limit Court involvement in business decisions by a Trustee . . . [so that] a Court may not interfere with a reasonable business decision made in good faith by a Trustee".  *In re Airlift Int'l., Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

25.  Other courts have approved the sale of a debtor's assets under §363(b)(1) of the Bankruptcy Code when (i) the sale is supported by the sound business judgment of the debtor's management; (ii) interested parties are provided with adequate and reasonable notice; (iii) the sale price is fair and reasonable; and (iv) the purchaser has acted in good faith.  *See, e.g., In re Betty Owens Schools, Inc.*, WL 188127 at *4 (S.D.N.Y. 1997) (setting forth the foregoing four elements in connection with the 363(b)(1) inquiry and citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169  (D. Del. 1991);  *In re General Bearing Corp.*, 136 B.R. 361, 365-66 (Bankr. S.D.N.Y. 1992) (suggesting that the salient factors under *Lionel* are the foregoing elements).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Ames Dept. Stores, Inc.*, 136 BR 357, 359 (Bankr. S.D.N.Y. 1992); *In re Integrated Resources, Inc.*, 147

B.R. at 656-57 (S.D.N.Y. 1992) (a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate). The Debtor has determined that the maximization of the return to creditors can best be accomplished through the proposed Sale upon the terms contained in the APA and that the transaction is in the best interests of its estate, and thus should be approved by the Court.

26.     In determining whether a "sound business purpose" exists with respect to a sale of assets prior to confirmation of a plan, Courts have looked at such factors as:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and most importantly perhaps, whether the asset is increasing or decreasing in value.

> *Lionel*, 722 F.2d at 1071.

27.     In the Debtor's business judgment, the relief sought will maximize the Debtor's recovery on its assets and is therefore in the best interests of its estate.

28.     The Debtor has not operated profitably since prior to the Petition Date. The Debtor is also not able to obtain credit terms from vendors, further compromising its cash flow. As a result, the Debtor has no ability to propose a plan that would provide for any return to its creditors. A sale is the only viable option that will allow for any recovery on the

Assets. Time is therefore of the essence with respect to the APA. The proposed sale structure provides for the assumption of the Assumed Encumbrances plus a cash component of $75,000, which proceeds will be utilized to satisfy creditor claims. Debtor will then explore opportunities to sell its remaining assets, specifically the Ohio real property, to determine if the Debtor will have additional proceeds available to distribute to its creditors pursuant to liquidating plan of reorganization or if the case should be dismissed.

## The Debtor Has Exercised Sound Business Judgment

29. The Debtor believes that the Sale to Purchasers represents a prudent and proper exercise of its business judgment and is supported by articulated business reasons because, absent such a sale, the Debtor would likely be forced to liquidate, resulting in no distribution to any of its creditors and the loss of jobs of the Debtor's employees. With the sale to Purchasers, the Debtor is maximizing the value of its assets, preserving jobs and potentially generating proceeds for distribution to various creditor constituencies. *See, NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) (the "fundamental purpose of reorganization is to prevent the debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources"); *In re Chateaugay Corp.*, 201 B.R. 48, 72 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997) ("public policy, as evidenced by Chapter 11 of the Bankruptcy Code, strongly favors the reorganization and rehabilitation of troubled companies and concomitant preservation of jobs and going concern values"). Without the

Sale, the Debtor has no exit scenario other than liquidation which in all likelihood will result in no funds for distribution on account of creditor claims.

## The Sale Price is Fair and Reasonable

30.    The Sale to Purchaser represents the highest and best price for the Assets secured by the Debtor to date.  In the Debtor's view, the APA represents substantial value to the Debtor's estate and provides favorable terms for disposition of the Assets as a going concern in exchange for fair and reasonable consideration. *See, Mellon Bank N.A. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1992); *See, also, Mellon Bank N.A. v. Official Comm. Of Unsecured Creditors*, 92 F.3d 139 (3d) Cir. 1996).  Moreover, the Debtor's arm's length negotiations with the Purchaser ensured that the ultimate purchase price secured for the Assets is fair and reasonable under the circumstances.  The ultimate purchase price, taking into consideration the Assumed Encumbrances, aggregates $2,753,614.12. Liquidation at this point would likely result in no funds for distribution to creditors. Therefore, the APA is not only fair and reasonable; it is also the Debtor's only viable option.  In addition, the continuation of the business is extremely important to the Debtor's employees, vendors and customers. Orders for the Debtor's product have continued unabated post-petition and the Debtor's product remains in high demand.  The Debtor however has been unable to meet production demands as a result of its significant cash flow short falls. Debtor submits that the business has the ability to be profitable if it had the funds necessary to increase its production.  Purchasers believe they have the ability to keep the business

afloat, continue the employment of certain of the employees, continue to provide a highly regarded product to its customers and provide vendors with the ability to do business with the farm going forward.

31.     Inasmuch as the Debtor has determined that the preservation of the Debtor's business operations can be best accomplished only through the sale of the Assets, the Debtor submits that a sale at this time, upon the terms contained in the APA (or such higher and better terms as may be submitted at the Sale Hearing) is in the best interests of its estate and creditors and should be approved by this Court.

## ASSET SALE FREE AND CLEAR OF ENCUMBRANCES

32.     The Debtor seeks approval to sell its Assets as a going concern, free and clear of any and all liens, claims or encumbrances, but subject to certain assumed encumbrances, in accordance with §363(f) of the Bankruptcy Code.  A debtor-in-possession may sell property to §§363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions are satisfied:

> (i)      applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (ii)     such entity consents;
>
> (iii)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (iv)     such interest is in bona fide dispute; or

(v)       such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

33.      Whatever final price is achieved here, the proceeds will be distributed in accordance with the priority under the Bankruptcy Code, with the liens of the secured creditors to be taken into consideration with respect thereto.

## **BIDDING PROCEDURES**

34.      The Debtor intends to entertain such higher or better offers for the Sale. At the public auction each bidder who complies with the terms and conditions set forth herein (or such other terms and conditions as the Court may direct) will have the right to make a higher or better offer. The Debtor reserves the right to amend, delete or otherwise change the terms and conditions of the bidding prior to or at the public auction, which amendments, deletions or changes shall be announced at the public auction. The Debtor reserves the right to reject any offer which, in its discretion, is deemed inadequate or insufficient or which is contrary to the best interests of the estate and creditors.

35.      The Debtor proposes the following terms and conditions for bidding procedures in connection with the public auction:

(a)      that the public auction sale of the Assets will be conducted before this Court, on a date and time set by this Court, upon the terms and conditions set forth herein and in this Court's order directing the Debtor to conduct the auction (the "Public Auction Sale");

(b)     that to be considered by the Debtor and the Bankruptcy Court, an offer for the purchase of the Assets must be a qualified competing bid ("Qualified Competing Bid") made by a qualified competing bidder ("Qualified Competing Bidder"), as provided herein;

(c)     that a Qualified Competing Bid shall consist of an offer for the purchase of the Assets made by a Qualified Competing Bidder, in accordance with the terms hereof, and accompanied by a deposit as provided for herein;

(d)     that an offer for the purchase of the Assets that is submitted by a party prior to the calendar call of this Motion, which the Debtor, reasonably believes to be financially able and interested in consummating  a purchase of the Assets shall be deemed a Qualified Competing Bidder;

(e)     each offer must be served upon Debtor's counsel: Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Floor, New York, NY 10022 Attn: A. Mitchell Greene and accompanied by evidence satisfactory to the Debtor, of the willingness and financial ability of the Qualified Competing Bidder to consummate the transaction to be deemed a Qualified Competing Bid;

(f)     that Purchasers shall be deemed to be a Qualified Competing Bidder;

(g)     that each Qualified Competing Bid must be served upon Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck PC, 875 Third Avenue, New York, New York 10022, Attn: A. Mitchell Greene, Esq., so as to be received no later than two (2) business days prior to the Public Auction Sale of

the Assets;

(h)    that each Qualified Competing Bidder (other than Purchasers) making a Qualified Competing Bid must deliver to Debtor's counsel, at the time of making such Qualified Competing Bid, a deposit in an amount equal to at least 10% of its Qualified Competing Bid (a "Deposit");

(i)    that Deposits shall be made in immediately available funds (cashier's check, certified check, irrevocable letter of credit, or cash);

(j)    that if a Qualified Competing Bidder becomes the Purchaser of the Assets, its Deposit shall be deemed to be non-refundable and shall be forfeited to the Debtor if such Purchaser fails to close for any reason other than a material breach by the Debtor or the termination of the sale pursuant to the terms thereof;

(k)    that if a Qualified Competing Bidder does not become the Purchaser of the Assets, its Deposit shall be returned to it within the earlier of (i) three business days after the Debtor's closing of a sale of the Assets to Purchaser; or (ii) 30 day's after the date of the Public Auction Sale;

(l)    that a Qualified Competing Bid must contain an offer to purchase all of the Assets *provided, however,* that the Debtor, in its sole discretion, may waive compliance with this paragraph;

(m)    that a Qualified Competing Bid must contain terms and conditions no less favorable to the Debtor's estate than those terms and conditions contained herein or in the APA;

(n)    that a Qualified Competing Bid must not be contingent upon either financing or the conduct or results of any due diligence investigation;

(o)    that a Qualified Competing Bid must provide for a closing date in accord with that set forth in the APA;

(p)    that the Debtor, in the exercise of its discretion, may adjourn the Public Auction Sale on the record on the date of the Public Auction Sale if the Debtor believes that a higher or better offer may be made by a potential purchaser upon the completion of due diligence that has not, as of the date of the Public Auction Sale, been completed;

(q)    that at the Debtor's sole reasonable discretion, the Debtor may treat as waived and revoked any Qualified Competing Bid made by any Qualified Competing Bidder (other than Purchasers) who does not attend the Public Auction Sale;

(r)    that at the time and place of the Public Auction Sale, the initial offer for the purchase of the Assets shall be deemed to be the offer made by Purchaser in accordance with the terms thereof (the "Purchaser's Offer");

(s)    that at the time and place of the Public Auction Sale, if no Qualified Competing Bid has been timely submitted that constitutes a higher and better offer for the Assets than the Purchaser's offer, the Debtor shall move the Bankruptcy Court for the approval of the Purchaser's offer, and upon entry of an order of the Bankruptcy Court approving the Purchaser's offer, the Purchaser shall be deemed to be successful Purchaser;

(t)    that at the time and place of the Public Auction Sale, if one or more Qualified Competing Bids

have been timely submitted that constitute a higher and better offer for the Assets than the Purchaser's offer, and neither Purchaser, nor any other Qualified Competing Bidder wishes to submit a revised, higher and better bid on the record, the Debtor shall submit the Qualified Competing Bid to the Bankruptcy Court as the highest and best Qualified Competing Bid and shall move the Bankruptcy Court for the approval of the Qualified Competing Bid, and upon Bankruptcy Court Approval, such bidder shall be deemed to be the successful purchaser;

(u)     that at the time and place of the Public Auction Sale if one or more Qualified Competing Bids have been timely submitted that constitute a higher and better offer for the Assets than the Purchaser, the Debtor shall conduct an auction among Purchaser and any Qualified Competing Bidder or Bidders that has or have submitted a Qualified Competing Bid or Bids;

(v)     that the minimum opening bid at the Public Auction Sale shall be in the amount of the highest and best Qualified Competing Bid submitted to the Debtor in accordance with the terms hereof, which minimum opening bid shall not be less than $50,000 more than Purchasers' offer;

(w)     that subsequent bids made on the record at the Public Auction Sale shall be in minimum increments of $25,000;

(x)     that at such time as it appears to the Debtor in the exercise of its reasonable discretion, that neither Purchaser nor any Qualified Competing Bidder present at the Public Auction Sale is prepared to advance the bidding, the Debtor shall (after giving fair warning, on the record, to those entities present) close the bidding on the record and the

entity which immediately prior to the close of the bidding shall have submitted the highest and best offer for the purchase of the Assets shall be declared the purchaser of the Assets, subject to an order of the Bankruptcy Court approving the sale;

(y)     that in the event that the purchaser of the Assets is an entity other than Purchaser, then such purchaser shall be bound by all of the terms of the APA (as such terms, including those with respect to the purchase price, shall have been modified by the terms of such purchaser's winning bid); and

(z)     that in the event that the purchaser of the Assets is an entity other then Purchasers, then Purchasers shall be entitled, subject to Bankruptcy Court Approval, to a break up fee equal to the actual out of pocket expenses Purchasers incurred in connection with the execution of the APA, including without limitation its legal and other professional fees up to three (3%) percent of the purchase price paid pursuant to the successful purchaser up to $35,000.00.

## WAIVER OF STAY PERIODS

38.     To preserve the value of the Debtor's estate and expedite the closing of the transactions contemplated by the APA, it is important that the Debtor be allowed to close the Sale as soon as possible after all closing conditions have been met or waived.  Accordingly, the Debtor hereby requests that the Court waive the ten (10) day stay periods under Bankruptcy Rules 6004(h) and 6006(d), or in the alternative, if an objection to this Motion is filed, reduce the stay period to the minimum amount of time reasonably required by the objecting party to file its appeal.

{00474209.DOC;1}460686

## NOTICE

39.     It is proposed the bidding procedures and auction be noticed by Federal Express or other overnight delivery service upon the Debtor's secured creditors, the Debtor's twenty largest unsecured creditors, those parties who have filed Notices of Appearance and the Office of the United States Trustee no later than one (1) business day after entry of the prefixed order scheduling hearing on shortened notice (the "Order"). The Debtor will also serve a copy of the Order, Motion, and the Exhibits on which it is based, upon all entities which have expressed an interest in purchasing the Debtor's assets within the last six months.

## CONCLUSION

40.     The Debtor submits that a sale of substantially all of its Assets pursuant to the APA is a sound and prudent exercise of its business judgment.  The sale to Purchaser, or such other entity or entities as may submit a higher and better offer for the Assets at a hearing to consider the Sale, will maximize the value of the Debtor and result in a distribution to creditors.  In addition, jobs will be preserved.

41.     No prior application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor seeks the entry of an order (i) pursuant to §§363(b), (f) and (m) of the Bankruptcy Code and Bankruptcy Rules 6004, 9006 authorizing the Debtor to sell the Assets as defined in the APA free and clear of any and all claims, liens, encumbrances and other interests thereon, except for the Assumed Encumbrances, subject to

{00474209.DOC;1}460686

higher and better offers; approving and authorizing the Bidding Procedures set forth in the

Order to Show Cause and granting to the Debtor such other and further relief as is just and

appropriate; and (ii) granting the Debtor such other and further relief as the Court deems just

and proper.

**DATED:**  New York, New York
March 26, 2010

> **ROBINSON BROG LEINWAND GREENE**
> **GENOVESE & GLUCK P.C.**
> **Attorneys for the Debtor**
> 875 Third Avenue, 9th Floor
> New York, New York 10022
> Tel. No.: (212) 603-6300
>
> By: /s/ A. Mitchell Greene