UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re

   Jurgielewicz Duck Farm,

      Debtor.
---------------------------------------------------------x

Chapter 11

Case No: 8-10-70231-478

# MEMORANDUM DECISION

*Appearances:*

| | |
|---|---|
| Robinson Brog Leinwand Greene et al. | Sinnreich Kosakoff & Messina, LLP |
| *Attorneys for Debtor* | *Special Counsel to Debtor* |
| By: Lori A. Swartz, Esq. | By: Jonathan Sinnreich, Esq. |
|  Robert Leinwand, Esq. | Courthouse Plaza |
| 875 Third Avenue, 9th Floor | 267 Carleton Avenue, Suite 301 |
| New York, New York 10022 | Central Islip, New York 11722 |
| | |
| Todtman, Nachamie, Spizz & Johns, P.C. | Office of the United States Trustee |
| *Attorneys for Couack Capital, Inc.* | *Attorney for the United States Trustee* |
| By: Barton Nachamie, Esq. | By: Stan Y. Yang, Esq. |
| 425 Park Avenue | 560 Federal Plaza – Room 560 |
| New York, New York 10022 | Central Islip, New York 11722 |
| | |
| Dranitzke, Lechtrecker, Tradbold et al. | Robert F. Quinlan |
| *Attorneys for Titmus Enterprises* | *Brookhaven Town Attorney* |
| By: Harold G. Trabold, Esq. | By: Thomas Ventura, Esq. |
| 73 North Ocean Avenue | 1 Independence Hill |
| Patchogue, New York 11772 | Farmingville, New York 11938 |
| | |
| Christine Malafi | Zavatsky, Mendelsohn, & Levy, LLP |
| *Suffolk County Attorney* | *Attorneys for First Pioneer Farm Credit, ACA* |
| By: Brian Callahan, Esq. | By: Allan B. Mendelsohn, Esq. |
| H. Lee Dennison Building | 33 Queens Street |
| 100 Veterans Memorial Highway | P. O. Box 510 |
| Hauppauge, New York 11788 | Syosset, New York 11791 |
| | |
| Morningside Heights Legal Services | Office of the New York State Attorney General |
| Columbia Law School | *Attorneys for the New York State Dept. of* |
| *Attorneys for Save the Forge River, Inc.* | *Environmental Conservation* |
| By: Susan J. Kraham, Esq. | By: Isaac Cheng, Esq. |
| 435 West 116th Street | 120 Broadway, 26th Floor |
| New York, New York 10027 | New York, New York 10271 |

Hon. Dorothy Eisenberg, United States Bankruptcy Judge

The issue before the Court is whether the Debtor's real property can be sold free and clear of development rights in the real property purchased by the County of Suffolk and the Town of Brookhaven under 11 U.S.C. §§ 363(b), (f), and (n).  This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O), and 11 U.S.C. §§ 541 and 363.  The following constitutes the Court's finding of fact and conclusions of law.

<u>FACTS</u>

The Debtor filed for chapter 11 relief under the Bankruptcy Code on January 12, 2010.  The Debtor has operated a free range duck farm on at least 45 acres of farm land (the "Property") located in the hamlet of Moriches in the Town of Brookhaven (the "Town") in the County of Suffolk ("Suffolk County" or the "County").  The farm has been in operation since 1919 and is one of two duck farms remaining in Suffolk County.

In the 1970s, the County was concerned about the rapid loss of farmland that occurred in the County since 1950 as a result of the growth of suburban development whereby the amount of farmland declined from approximately 123,000 acres in 1950 to 68,000 acres in 1972.  In response, the County approved capital funds for the creation of a capital program to permanently protect farmland through the purchase of development rights and adopted legislation in 1981 entitled "Development Rights to Agricultural Lands" which provides in pertinent part under §8-1:

> A. The State of New York, by various legislative enactments, has emphatically stated it to be a most important state policy to conserve and protect and to encourage the improvement of agricultural lands, both for the production of food and the preservation of such lands as valued natural and ecological resources.  It has further stated that the expenditure of county funds to acquire legal interests and rights in such lands is in furtherance of such policy and is a proper expenditure of public funds for public purposes.

1

B. The county is in complete accord with such policy, and this chapter is intended to indicate generally the procedures which will be employed by the county in its pursuit of its goal to protect and conserve agricultural lands, open spaces and open areas.

The State's interest in preserving agricultural land can be found in its Constitution and state legislation. Article XIV §4 of the New York State Constitution states:

> [t]he policy of the state shall be to conserve and protect its natural resources and scenic beauty and encourage the development and improvement of its agricultural lands for the production of food and other agricultural products.... The legislature shall further provide for the acquisition of lands and waters, including improvements thereon and any interest therein outside the forest preserve counties, and the dedication of properties so acquired or now owned, which because of their natural beauty, wilderness character, or geological, ecological or historical significance shall be preserved and administered for the use and enjoyment of the public.  Properties so dedicated shall constitute the state nature and historical preserve and they shall not be taken or otherwise disposed of except by law enacted by two successive regular sessions of the legislature.

N.Y. Const. art. XIV, §4.  Section 247 of New York's General Municipal Law states in pertinent part:

> 1. For the purposes of this section natural resources shall include but not be limited to agricultural lands defined as open lands actually used in bona fide agricultural production.
>
> 2. The acquisition of interests or rights in real property for the preservation of open spaces and areas shall constitute a public purpose for which public funds may be expended or advanced, and any county, city, town or village after due notice and a public hearing may acquire, by purchase, gift, grant, bequest, devise, lease or otherwise the fee or any lesser interest, development right, easement, covenant or other contractual right necessary to achieve the purposes of this chapter....

N.Y. GEN. MUN. LAW § 247 (McKinney 1999).

As testified by Thomas Isles, Director of Planning for Suffolk County, the County's interest in preserving the agricultural industry due to its economic, cultural and social impact on Long Island has not changed and remains the same today as it did when it approved its

2

legislation.  Voters in the County on numerous occasions have approved referendums for the

purchase of these development rights to farm lands with the last referendum having been held in

November of 2006 whereby voters authorized this program until 2036.  Mr. Isles also testified

that there is no statutory provision that provides for monetary compensation for the County and

the Town should the Development Rights be extinguished.

In 2006, the Debtor voluntarily applied to participate in the County's purchase of the

development rights program.  A resolution to commence the acquisition of the Development

Rights was passed by the Suffolk County Legislature on June 27, 2006 and the County

undertook several appraisals of the Property to determine the market value of the Property.  On

August 23, 2006, a written offer was made to the Debtor to purchase the Development Rights

and the offer was accepted on August 28, 2006.  On December 19, 2006, the Suffolk County

Legislature unanimously approved of the resolution to authorize the purchase of the

Development Rights. On January 18, 2007, the Debtor entered into an agreement to sell the

debtor's development rights in the Property to the County and the Town with each governmental

entity owning 50% of the development rights (the "January 18, 2007 Agreement").  Paragraph 1

of the January 18, 2007 Agreement states as follows:

> Development Rights, as authorized by 247 of the New York State General
> Municipal Law, as amended, shall mean the permanent legal interest and right to
> permit, require or restrict the use of the premises exclusively for agricultural
> production as that term is defined in Chapter 8 of the Suffolk County Code, as
> amended, and the right to  preserve open space as that term is defined in § 247 of
> the General Municipal Law as amended, and the right to Prohibit or restrict the
> use of the premises for any purposes other than agricultural production or to
> subdivide the same.  By the sale of such development rights and interest, the
> SELLERS shall be deemed to have covenanted and agreed that the SELLERS,
> and their heirs, legal representatives, successors and assigns of the SELLERS,
> shall only use the premises on and after the date of delivery of the instrument of
> conveyance to the COUNTY OF SUFFOLK and the TOWN OF

BROOKHAVEN for the purpose of such agricultural production.  Such Covenant shall run with the land in perpetuity.  The provisions of this paragraph shall survive the delivery of the instrument of conveyance.

Accordingly, the Debtor, its successors and assigns covenanted and agreed that the Property at issue would be used for agricultural production and such covenant would run with the land in perpetuity (the "Development Rights").  As additional consideration for the purchase of the Development Rights, the Debtor and its mortgagee, First Pioneer Farm Credit, entered into an Agreement of Non-Interference with Development Rights on March 29, 2007 whereby the parties covenanted and agreed that First Pioneer's existing first mortgage against the Property would not interfere with the purchase and holding of the Development Rights and would be subjected to and subordinated to those Development Rights.

On March 30, 2007, the Debtor sold its Development Rights in the Property to the County and the Town pursuant to a Deed of Development Rights (the "Deed") which was recorded with the Suffolk County Clerk providing public notice of the County and Town's ownership in the Development Rights.  The Deed sets forth that in consideration for $5,632,976.84 and other good and valuable consideration paid, the Debtor grants and releases to the County and Town forever, "THE DEVELOPMENT RIGHTS, by which is meant the permanent legal interest and right, as authorized by §247 of the New York State General Municipal Law, as amended, and Local Law 16-1981 of the County of Suffolk, as amended to permit, require or restrict the use of the premises exclusively for agricultural production as that term is defined in Local law 16-1981 of the County of Suffolk, as amended, and the right to preserve open space as that term is defined in § 247 of the New York State General Municipal Law, as amended, and the right to prohibit or restrict the use of the premises for any purpose

4

other than agricultural production, to the property...." The Development Rights conveyed are subject to the terms and conditions set forth in the January 18, 2007 Agreement, which survived the delivery of the deed. In addition, the Debtor covenanted to use the Property solely for the purpose of agricultural production. This was a sale by the Debtor of its traditional in rem rights which runs with the land.

As testified by Mr. Isles, a covenant to use the Property solely for purposes of agricultural production does not limit the use of such Property to the production and raising of ducks and the Property can be sold and can be used for other types of agricultural production, such as livestock, fruit, vegetables, bees, etc.

On March 26, 2010, the Debtor filed a motion in this Court seeking authorization to sell, *inter alia*, most of the land constituting the Property in Moriches to Couack Capital Corp. ("Couack"), which is the Debtor's debtor-in-possession lender, and together with South Shore Farm Realty LLC, free and clear of any liens, claims, encumbrances and interest in the Property, subject to any higher or better offers, and to establish bidding procedures for such sale. The County objects to the proposed bidding procedures for the sale of the Property as the bidding procedures do not put prospective bidders on notice that the sale would be subject to the County and the Town's Development Rights. Couack argues that 11 U.S.C. § 363(f) would enable the Debtor to sell the Property free and clear of the County and Town's Development Rights if, *inter alia*, state law permits the sale of the property free and clear and that the County and the Town can be compelled to accept a money satisfaction of such interest in the Development Rights. Couack further contends that it should be permitted to purchase the Debtor's land free and clear of the Development Rights held by the County and the Town. It further suggests that

an evidentiary hearing was necessary to determine whether the Development Rights could be modified under state law.  However, when questioned by the Court at a hearing on the Debtor's motion held on May 11, 2010 on what disputed issue of fact would necessitate an evidentiary hearing to resolve this issue, Couack could not present a disputed issue of fact for consideration. The Debtor urges the Court to allow the Property to be sold free and clear of the County and Town's Development Rights because it is concerned that it would not be able to sell the Property subject to the Development Rights and without such sale, the Debtor would not succeed in its bankruptcy reorganization.

The Court finds that there is no genuine issue as to any material facts, therefore, this Court can provide its decision in regards to whether the proposed sale of the Debtor's real property can be sold free and clear of the Development Rights the Debtor sold to the County and the Town.

DISCUSSION

A debtor in possession, after notice and a hearing, may sell, other than in the ordinary course of business, property of the estate.  11 U.S.C. § 363(b)(1).  Therefore, the initial inquiry is whether the Development Rights are property of the bankruptcy estate under 11 U.S.C. §541 which the Debtor can sell or otherwise affect.

The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. §541(a).  "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979).  Under New York's Real Property Law §245, "[a] greater estate or interest does not pass by grant or conveyance, than the grantor possessed or could lawfully convey, at the time of the delivery of

6

the deed; except that every grant is conclusive against the grantor and his heirs claiming from

him by descent, and as against a subsequent purchaser or incumbrancer from such grantor...."

N.Y. REAL PROPERTY LAW § 245 (McKinney 2006).  See also 43A N.Y. Jur.2d Deeds § 241.

When the Debtor conveyed its interest in the Development Rights to the County and

Town for fair consideration, it no longer owned the Development Rights.  If the Debtor sought to

convey the land which represents the Property outside of bankruptcy, it can only convey

Property subject to the Development Rights held by the County and the Town.  Accordingly,

when the Debtor filed for bankruptcy relief, the Development Rights did not become property of

the Debtor's bankruptcy estate under 11 U.S.C. § 541.

Couack nevertheless argues that the County's Development Rights constitute an interest

in the Debtor's Property because the Development Rights are similar to a restrictive covenant.

Pursuant to section 363(f), a trustee or a debtor in possession may sell such property under

section 363(b) "free and clear of any interest in such property of an entity other than the estate,

only if –

> (1) applicable nonbankruptcy law permits sale of such property free and clear of
> such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is
> greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a
> money satisfaction of such interest.

11 U.S.C. § 363(f).

In this instance, the County and Town do not consent to the sale of the Property free and

clear of their Development Rights.  The parties agree that the Development Rights are not liens

against the Property and the interest of the County and the Town in the Development Rights is

not the subject of a bona fide dispute.

Couack argues that applicable nonbankruptcy law, i.e., New York's Real Property Actions and Proceedings Law ("RPAPL") § 1951 , permits the extinguishment of restrictive covenants on real property such that a sale of the Property can be free and clear of the Development Rights.

A covenant to use the Property solely for agricultural purposes would run with the land and bind the covenantee's benefits and covenantor's burdens upon their respective successive assignees if: (1) there is privity of estate; (2) the original covenanting parties intended the covenant to run; and (3) the covenant touches and concerns the land.  *In re East Fifth Street Housing Preservation Development Fund Corp.*, 79 B.R. 568, 574 (Bankr. S.D.N.Y. 1987).  In this case, all three conditions are satisfied.  The January 18, 2007 Agreement and the Deed are between the Debtor and the County and Town.  The parties intended the covenant to run with the land in perpetuity and be binding on the Debtor, its successors and assigns as specified in the January 18, 2007 Agreement and in the Deed.  The Development Rights touch and concern the land as it restricts the use of the Property solely for agricultural purposes.  Thus, the Development Rights constitute an interest in the Property.

A restriction on the use of land can be extinguished under  RPAPL §1951 which states in pertinent part:

> 1. No restriction on the use of land created at any time by covenant, promise or negative easement, or created on or after September 1, 1958, by a special limitation or condition subsequent governed by section 1953, shall be enforced by injunction or judgment compelling a conveyance of the land burdened by the restriction or an interest therein, nor shall such restriction be declared or determined to be enforceable, if, at the time the enforceability of the restriction is brought in question, it appears that the restriction is of no actual and substantial benefit to the persons seeking its enforcement or seeking a declaration or

8

> determination of its enforceability, either because the purpose of the restriction
> has already been accomplished or, by reason of changed conditions or other
> cause, its purpose is not capable of accomplishment, or for any other reason.

N.Y. REAL PROP. ACTS. Law §1951(1) (McKinney 2009). If a court finds that the restriction is

of no actual and substantial benefit to the persons seeking its enforcement either because the

purpose of the restriction has already been accomplished or, by reason of changed conditions or

other cause, its purpose is not capable of accomplishment, or for any other reason, the court may

hold that the restriction is not enforceable and be extinguished upon payment of damages, if any,

to the person who would otherwise be entitled to enforce it in the event of a breach. N.Y. REAL

PROP. ACTS. LAW §1951(2). Thus, Couack argues that an evidentiary hearing is necessary to

determine whether the restriction should be extinguished because of changed conditions or the

purchase of the Development right is not capable of being accomplished even though it admitted

that it does not know at this time what factual evidence it would seek to establish.

However, Couack fails to address the applicability of RPAPL §1955 which not only

provides for similar judicial relief as RPAPL §1951 with respect to a restriction or special

limitation on land held for a public purpose but it also specifically excepts restrictions made by

or with subdivisions of the State of New York.

> **§ 1955. Modification or extinguishment of certain restrictions on the use of
> land held for charitable purposes**
> 1. Where land is held, whether or not in trust, for benevolent, charitable,
> educational, public or religious purposes and the use of such land is restricted to
> such purpose or to a particular application of or means of carrying out such
> purpose by a special limitation or condition subsequent created in the conveyance
> or devise under which the land is so held, or by an agreement to convey, reconvey
> or surrender the land or the estate so held upon a contingency relating to its use,
> an action may be brought in the supreme court to obtain relief from such
> restriction as provided in this section.
> . . .
> 5. This section shall apply to a special limitation or condition subsequent created

9

or agreement made either before or after September 1, 1958, <u>except that it shall not apply</u> (a) where a right of entry or right to a conveyance, reconveyance or surrender of the property has accrued or a reverter has occurred prior to that date, or (b) <u>where the conveyance creating the restriction was made by or the agreement creating the restriction was made with the United States, the state of New York or any governmental unit, subdivision or agency of the United States or the state of New York.</u>  (Emphasis added.)

N.Y. REAL PROP. ACTS. LAW § 1955 (McKinney's 2009) .  See also *DiPietro v. County of Westchester*, 237 A.D.2d 325, 325 (N.Y. App. Div. 1997)(finding that the effect of a restriction on the use of property as a public park set forth in a deed of property by the County of Westchester, a subdivision of New York State, could not be extinguished as a result of RPAPL §1955(5)).  "RPAPL § 1951 and § 1955 were enacted simultaneously, supporting the theory that the sections are to be read together.  It would follow that applicability of a specific provision (§ 1955) renders another, general provision (§ 1951) inapplicable."  *In re East Fifth Street Housing Preservation Development Fund Corp.*, 79 B.R. at 571.

> Although the wording of § 1955(5) would appear to limit its applicability to § 1955 and not include § 1951, to so hold would permit use of § 1951 to negate the express condition of § 1955(5) notwithstanding the legislative intention to preserve restrictions in favor of public entities. Furthermore, it is in § 1955 that the legislature specifically addressed restrictions on land to use for a public purpose.

*Id.*, at 572 (holding that a covenant in a deed by which the City of New York conveyed property to the debtor requiring the property to be used solely for low income housing not to be voidable under RPAPL §1955(5) because the covenant was created for a public purpose with a governmental subdivision of the state).

Because the Development Rights in this case created a restriction on the Property for a public purpose and the conveyance was by a contractual agreement with a governmental unit that

is a subdivision of New York State, the Development Rights are not voidable under RPAPL §1955(5). Accordingly, the procedures for extinguishing restrictions cited by Couack under RPAPL §1951 would not be applicable and any evidentiary hearing on whether, in a balancing of equities, the restrictive covenant is of no actual and substantial benefit would serve no purpose. In this case, applicable nonbankruptcy law does not provide for the sale of the Property free and clear of the Development Rights.

Moreover, the Director of Planning for the County has testified that the public continues to support the County's program for preserving agricultural land as voters last passed a referendum in 2006 to approve of funding for the program until 2036. Indeed, the referendum occurred around the time the Suffolk County Legislature approved the purchase of the subject Development Rights. Even though there may not be an interested party at the moment who is interested in purchasing the land subject to the Development Rights, the County testified that there have been instances where land restricted for agricultural use have laid fallow for years until the land is purchased by another party seeking to continue the use of the land for agricultural purposes. Thus, the public purpose of the agricultural restriction on a parcel of land is not defeated even though years may pass before another farmer takes over the land.

Lastly, Couack argues that the County and Town could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their Development Rights and thus they are adequately protected for their interest in the Property. Couack argues that a restriction or negative covenant on land was a property right that was compensable when such restriction or negative covenant is extinguished, similar to that found in condemnation proceedings. *Palm Beach County v. Cove Club Invs., Ltd.*, 734 So. 2d 379 (Fla. 1999) (county required to pay

11

monthly recreational fee assessments for land subject to the fee and purchased by eminent

domain in an inverse condemnation action because the restrictive covenant was a compensable

property right); *Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Assn.*, 933

S.W.2d 570 (Tex. Ct. App. 1996) (covenants are property interests subject to condemnation and

just compensation); *Meredith v. Washoe County Sch. Dist.*, 435 P.2d 750 (Nev. 1968) (restrictive

covenant is a property right that, when taken by eminent domain, entitled the party benefitted by

the covenant to just compensation); *Raleigh v. Edwards,* 71 S.E.2d 396 (N.C. 1952) (owners of

land with negative covenants running in its favor were entitled to just compensation when those

property rights were taken by inverse condemnation); *Store Safe Redlands Assocs. v. United

States*, 35 Fed. Cl. 726 (1996) (water rights and ditch right-of-way could be property rights

entitling land owner to just compensation if access was denied).

　　　As discussed above, RPAPL §1955(5) specifically excludes the extinguishment of

restrictions and negative covenants in land held for a public purpose where such restriction or

covenant is created by an agreement with a governmental entity.  In this instance, the County and

the Town paid fair consideration for the Development Rights.  Furthermore, 11 U.S.C. § 363(e)

provides for the court to prohibit or condition a sale or use of property where a party requests

adequate protection of such interest.  How would the County and Town be adequately protected

if this court were to permit the sale of the land free and clear of their Development Rights?

There is no procedure available under applicable nonbankruptcy law to compensate the County

and Town for the removal of their right to limit development of this land for agricultural

purposes.  There is no monetary satisfaction available in this case because the underlying

purpose is to prevent the land from being used or developed for any purpose other than

12

agriculture nor can the County and Town be compelled to accept monetary satisfaction under section 363(f)(5). The extinguishment of the Development Rights would defeat the public's purpose of purchasing these rights and preserving existing farmland and no measure of damages would make the County and Town whole or compensate them for the loss of farmland.

More important, Couack's analogy of the availability of monetary compensation for the extinguishment of an easement or negative covenant on land as a result of a condemnation proceeding is irrelevant to the facts and circumstances before this Court. In condemnation actions, courts have ruled that a beneficiary of an easement, restriction or covenant constitutes an interest in land and such beneficiary is entitled to monetary compensation where the easement, restriction or negative covenant on land is extinguished as a result of a taking or condemnation of private land occurs for a *public purpose*. The Debtor's motion to sell the Property free and clear of the Development Rights is not a condemnation proceeding by a governmental entity. An extinguishment of the Development Rights held by the County and the Town in this case would result in the taking of an interest in land held for a public purpose for the benefit of *private parties* (i.e, the purchaser, the Debtor and the Debtor's creditors). Accordingly, the Court finds that the County and Town cannot be compelled to accept monetary compensation in satisfaction of their Development Rights in the Property.

While the value of the Debtor's Property may be lower than similar property not burdened by governmental ownership of development rights and restrictions on the use of land, the Debtor has already been compensated in the approximate sum of $5.6 million when it sold the Development Rights to the County and the Town in 2007. If the Debtor were able to sell the Property free and clear of the Development Rights, the Debtor would be compensated twice for

13

sale of the same rights.  There is no inequity to the Debtor's creditors arising from the agricultural restriction on the use of the Property.  The Debtor's mortgagee was aware of the County and Town's purchase of these Rights as it entered into the Agreement of Non-Interference with Development Rights with the Debtor in March of 2007 where the Debtor and the mortgagee agreed that the first mortgage against the Property would not interfere with the purchase and holding of the Development Rights and would be subjected to and subordinated to those rights.  The Debtor's proposed purchaser and debtor-in-possession lender should have been aware of the County and Town's Development Rights in the Property when it determined to lend money to the Debtor as the Development Rights are matters of public record.  Moreover, creditors of the Debtor are entitled to a recovery only from the Debtor's assets and for the reasons discussed above, they are not entitled to any value that may be attributable to the Property if the Development Rights were to be extinguished.  Thus, any sale of the Property must be subject to the County and Town's Development Rights.

<u>CONCLUSION</u>

Based upon the foregoing, the Debtor may not sell its real property free and clear of the Development Rights in such property held by the County of Suffolk and the Town of Brookhaven under 11 U.S.C. §§ 363(b), (f), and (n).

Dated: Central Islip, New York
        May 20, 2010

*s/Dorothy Eisenberg*
United States Bankruptcy Judge

14