UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re:                                                    Chapter 11

JURGIELEWICZ DUCK FARM,                                   Case No. 10-70231 (DTE)

                           Debtor.
-----------------------------------------------------------------


**JOINT PLAN OF REORGANIZATION**
**DATED DECEMBER 30, 2010**
**OF DEBTOR AND COUAK CAPITAL CORP.**


Todtman, Nachamie, Spizz          Robinson Brog Leinwand, Greene,
   & Johns, P.C.                     Genovese & Gluck, P.C.
Attorneys for Couak Capital Corp. Attorneys for Debtor
425 Park Avenue                   875 Third Avenue
New York, NY  10022               New York, NY  10022
Barton Nachamie, Esq.             Lori Schwartz, Esq.
Jill Makower, Esq.                Arnold Mitchell Greene, Esq.

# JOINT PLAN OF REORGANIZATION

## ARTICLE I

## INTRODUCTION

Jurgielewicz Duck Farm (the "Debtor") and Couak Capital Corp. ("Couak"), a secured creditor of the Debtor, hereby propose the following Plan of Reorganization (the "Plan") for the resolution of the Debtor's outstanding Creditor Claims and Interests. Reference is made to the Debtor's Disclosure Statement dated December 29, 2010 (the "Disclosure Statement") for a discussion of the Debtor's history, business, property, results of operations and for a summary and analysis of this Plan, and certain related matters.

All holders of Claims and Interests are encouraged to read the Plan and Disclosure Statement in their entirety before voting to accept or reject this Plan.

## ARTICLE II

## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

### A. Definitions

In addition to such other terms as are defined in other sections of this Plan, the capitalized terms below have the following meanings as used in the Plan:

**"Administrative Expense Claim"** means an Allowed Claim against the Debtor entitled to priority in accordance with Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code including without limitation (a) the actual and necessary costs and expenses incurred after the Filing Date of preserving the estate and operating the business of the Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, financial, advisory and accounting and other services and

reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the estate under 28 U.S.C. §1930.

**"Affiliate"** shall have the same meaning as contained in section 101(2) of the Bankruptcy Code.

**"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

**"Allowed Claim" or "Allowed Interest"** means a Claim against or Interest in the Debtor to the extent that

    a.    a Proof of Claim or Interest

        (1)    was timely filed; or

        (2)    is deemed filed under applicable law or by reason of an order of the Bankruptcy Court; and

    b.    (1)    The Debtor or the Reorganized Debtor does not file an objection within the time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim (but only to the extent that such Claim is not a Disputed Claim);

        (2)    The Claim or Interest is allowed (and only to the extent allowed) by a Final Order; or

        (3)    The Claim or Interest is allowed under this Plan.

**"Allowed Class Claim"** means an Allowed Claim in the particular class described.

**"Bankruptcy Code"** means Title 11 of the United States Code, as now in effect for this Chapter 11 Case or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York.

**"Bankruptcy Rules"** means, collectively (a) the Federal Rules of Bankruptcy Procedure and (b) the local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York, as now in effect or hereinafter amended.

**"Barnes Road Property"** means the three parcels of real property located on Barnes Road in Moriches, New York, owned in fee by the Debtor, two of which are subject to the first mortgage of First Pioneer Farm Credit, ACA, and one of which is unencumbered.

**"Bellwether LLC Allowed Secured Claim"** means Bellwether LLC's Secured Claim, secured by the Widgeon Road House and a second mortgage on the Jurgielewicz Estates Property.

**"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**"Cargill Allowed Secured Claim"** means the Secured Claim of Cargill Inc., secured by the Wayne Cargill Property and by a first mortgage on the Kalmbach Property.

**"Cash"** means legal tender, cash equivalents and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks having a maturity date of no longer than ninety days.

**"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**"Chapter 11 Case"** means the Debtor's case for reorganization under Chapter 11 of the Bankruptcy Code, Case No. 10-70231(DTE) filed in the United States Bankruptcy Court for the Eastern District of New York.

**"Claimant"** means the holder of a Claim.

**"Claim"** means:

    a.    a right to payment, whether or not such right is reduced to judgment, liquidated or unliquidated, fixed or contingent, asserted or unasserted, matured, disputed or undisputed, legal, equitable, secured or unsecured, against the Debtor, or

    b.    a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, against the Debtor.

**"Class"** means each of the classifications of Claims or Interests described in Article V of this Plan.

**"Conditions Precedent to the Effective Date"** means all of the conditions set forth in Article IX of the Plan.

**"Confirmation"** means the entry of the Confirmation Order.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

**"Convenience Claim"** is an Unsecured Claim of the Debtor which (i) is in the Allowed Amount of $5,000.00 or less. Convenience Claims are classified in Class 6 of this Plan.

**"Conversion Agreement"** means the agreement of conversion of the Debtor, a copy of which is annexed to the Disclosure Statement as Exhibit "A".

**"Couak"** means Couak Capital Corp., a New York corporation which is a

proponent of this Plan.

**"Couak Allowed Secured Claim"** means Couak's Secured Claim in the amount equal to principal, interest, fees and expenses due and owing pursuant to the DIP Loan Agreement secured by the Couak Priming Lien.

"**Couak Priming Lien**" is the lien granted to Couak pursuant to the DIP Loan Agreement and the DIP Financing Orders.

**"County/Town Development Rights"** means the development rights which were purchased from the Debtor by Suffolk County and the Town of Brookhaven in 2007 and which are currently jointly owned by Suffolk County and the Town of Brookhaven.

**"County/Town Transaction"** means the transaction between the Debtor, Suffolk County and the Town of Brookhaven pursuant to which the Debtor sold to Suffolk County and the Town of Brookhaven the County/Town Development Rights under a contract dated January 18, 2007, the closing of which occurred on March 30, 2007.

**"Creditor"** means the holder of a Claim, an Allowed Claim or a Disputed Claim, as the case may be (c.f. Claimant, supra).

**"Debt"** means any liability on a Claim.

**"Debtor-in-Possession"** means the Debtor when acting in the capacity of representative of the estate in the Debtor's Chapter 11 Case.

**"Debtor"** means the Debtor herein, Jurgielewicz Duck Farm.

**"Debtor Development Rights"** means the Debtor's development rights with respect to the Titmus Property and any development rights of the Debtor not sold by the Debtor in the County/Town Transaction.

**"DEC"** means The New York State Department of Environmental Conservation.

**"DIP Financing Orders"** means, collectively, the emergency order entered by the Bankruptcy Court on March 8, 2010, the interim order entered by the Bankruptcy Court on April 5, 2010 granting interim approval of the DIP Loan Agreement, and the final order entered by the Bankruptcy Court on _____, 2011 granting final approval of the DIP Loan Agreement, as amended.

**"DIP Loan Agreement"** means the debtor in possession credit agreement dated as of February 2010 between Couak, as lender, and the Debtor, as borrower, which was approved by the Bankruptcy Court pursuant to the DIP Financing Orders, the term of which was extended through April 30, 2011, by Agreement dated as of December 31, 2010 and the letter agreement dated March 18, 2010 by and between Couak as lender and Debtor as borrower.

**"Disbursing Agent"** shall mean Reorganized Debtor or any other party or entity as may be designated by the Debtor.

**"Disallowed Claim"** means, with respect to a particular Disputed Claim, the amount, if any, by which the Face Amount of such Creditor's Disputed Claim exceeds the Allowed Amount of such Claim.

**"Disclosure Statement"** means the Disclosure Statement (and all exhibits and schedules annexed thereto or referred to therein) that relates to the Plan and that is approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

**"Disputed Claim"** means a Claim as to which a proof of Claim has been filed, or

deemed filed under applicable law, as to which an objection has been or may be timely filed by the Debtor or Reorganized Debtor and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or order of the Bankruptcy Court and has not been overruled or denied by a Final Order.  Prior to the time that an objection has been or may be timely filed, for the purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules; (ii) any corresponding Claim listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled, or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

**"Disputed Secured Tax Claim"** means the real estate tax claim filed by Suffolk County asserting a Secured Claim in the amount of $301,701.12, docketed as Claim No. 30, which was objected to by the Debtor and which objection has not yet been adjudicated.

**"Distribution Date"** means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to the Plan.

**"Distributions"** means the payments to Creditors and others (e.g., Professional Persons) by the Debtor of Cash pursuant to and required by this Plan.

**"Effective Date"** means the date that is twenty (20) days  after the Confirmation Date, or, if such date is not a Business Day, the next succeeding Business Day; provided however, that if all Conditions Precedent to the Effective Date have not been

satisfied on or prior to such date, then the Effective Date shall be the date on which all such Conditions Precedent to the Effective Date have been satisfied.

**"Estate"** means the estate created in the Debtor's Chapter 11 Case by Section 541 of the Bankruptcy Code.

**"Exhibit Filing Date"** means a date by which all exhibits to this Plan must be filed with the Court which shall be no later than ten (10) days prior to the commencement of the hearing on the adequacy of the information contained in the Disclosure Statement.

**"Face Amount"** means, with respect to any Claim,

 (a) if the holder of such Claim has not timely filed proof thereof with the Bankruptcy Court, the amount, if any, of such Claim listed in the Schedules;

 (b) if the holder of such Claim has timely filed proof thereof with the Bankruptcy Court, the amount stated in such proof; or

 (c) if an Allowed Amount has been established or determined, the amount of such Creditor's Allowed Claim.

**"Filing Date"** means January 12, 2010, the date that the Debtor commenced this Chapter 11 Case.

**"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the reorganization case, which has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal or file a petition for certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal that has been or may be taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

**"First Pioneer Allowed Secured Claim"** means the Secured Claim of First Pioneer Farm Credit, ACA, secured by a first mortgage on two of the three parcels that comprise the Barnes Road Property and by a lien on all of the Debtor's personal property superior to all liens on such personal property other than the Couak Priming Lien.

**"GMAC Allowed Secured Claim"** means the Secured Claim of GMAC secured by the Vehicle.

**"Insider"** shall have the same meaning as contained in Section 101(31) of the Bankruptcy Code.

**"Insider Unsecured Claim"** means an Unsecured Claim that is held by an Insider or was held by an Insider at any time prior to the Effective Date. Insider Unsecured Claims are classified in Class 5 of this Plan.

**"Interest"** shall mean an equity interest in the partnership which is the Debtor in this Chapter 11 Case.

**"Interest Holder"** means the holder of an Interest. The only Interest Holder of the Debtor is Benjamin Jurgielewicz.

**"Jurgielewicz Estates Property"** means the real property owned in fee by non-debtor Jurgielewicz Estates LLC located in Moriches, New York.

**"Kalmbach Feeds Allowed Secured Claim"** means the Secured Claim of Kalmbach Feeds Inc., secured by a second mortgage on the Kalmbach Property.

**"Kalmbach Property"** means the approximately 120 acres of real property located in Wayne, Ohio owned in fee by the Debtor which is subject to a first mortgage in favor of Cargill Inc. and a second mortgage in favor of Kalmbach Feeds Inc.

**"Lien"** means with respect to an asset or interest of the Debtor, any mortgage, lien, pledge, charge, encumbrance or other security interest of any kind affecting such asset.

**"New Couak Note"** means the promissory note to be issued as of the Effective Date in the principal amount of $400,000.00 plus accrued interest, fees and extraordinary expenses (totaling $475,000.00) between the Debtor, as maker and Couak, as payee, in the form annexed to the Disclosure Statement as Exhibit "B", providing for an interest rate of 12% per annum and a term of five years.

**"Non-Insider Unsecured Claim"** means an Unsecured Claim in an amount in excess of $5,000.00 that was not held by an Insider at any time prior to the Effective Date. Non-Insider Unsecured Claims are classified in Class 4 of this Plan.

**"Ohio Properties"** means, collectively, the Wayne Cargill Property and the Kalmbach Property.

**"Plan"** means this Plan of Reorganization and all exhibits and schedules annexed hereto, or referred to herein, as the same may be amended, modified and supplemented.

**"Plan Proponents"** means, collectively, the Debtor and Couak.

**"Priority Claim"** means an Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Expense Claim, and (b) a Priority Tax Claim.

**"Priority Tax Claim"** means an Allowed Claim by a governmental unit entitled to priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

**"Professional Persons"** means persons retained by the Debtor prior to the Confirmation Date by Final Order of the Bankruptcy Court pursuant to §§327 or 1103 of

the Bankruptcy Code.

**"Reorganized Debtor"** shall mean the Debtor on or after the Effective Date and shall be known as South Shore Farms, LLC.

**"Schedules"** means the Schedules of Assets and Liabilities filed by Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

**"Secured Claim"** means every Claim or portion thereof that is asserted by the Creditor holding such Claim to be secured by a Lien encumbering property in which the Debtor has an interest, to the extent of the value of the interest of the Creditor holding such Claim against such property of the Debtor.

**"Secured Tax Claim"** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

**"SPDES Permit"** means the Debtor's State Pollutant Discharge Elimination System permit issued by New York State.

**"STFR"** means Save The Forge River, Inc.

**"Suffolk County"** means Suffolk County, New York.

**"Titmus Allowed Secured Claim"** means the Secured Claim of Titmus Enterprises, secured by the Titmus Property.

**"Titmus Property"** means the two parcels of real property owned in fee by the Debtor located on Barnes Road in Moriches, New York which are subject to the mortgage in favor of Titmus Enterprises.

**"Town of Brookhaven"** means the Town of Brookhaven, Suffolk County, New York.

**"Transaction"** means the sale of the Debtor Development Rights and/or the sale of the Debtor's fee simple interest in the Titmus Property or the Barnes Road Property to the Town of Brookhaven, or to Suffolk County, or to any other qualified purchaser.

**"Transaction Date"** means the date of the closing on the Transaction.

**"Transfer Taxes"** means any and all transfer, stamp, sales or similar taxes that may be required to be paid in connection with the transactions contemplated by this Plan.

**"Unsecured Claim"** means any Claim that is not an Administrative Expense Claim, Priority Claim, Secured Claim, Tax Claim or Interest.

**"Unsecured Creditor"** means the holder of an Unsecured Claim.

**"Vehicle"** means the 2004 Chevrolet Tahoe truck, VIN no. 1GNEK13T14J317028, owned by the Debtor, subject to the lien of GMAC.

**"Wayne Cargill Property"** means the two parcels aggregating approximately 56 acres of real property located in Wayne, Ohio owned in fee by the Debtor, subject to the mortgage held by Cargill Inc.

**"Widgeon Road House"** means the home located at 7 Widgeon Road, Center Moriches, New York, owned in fee by the Debtor.

# ARTICLE III

## INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### 1.    Defined Terms

Any term used in this Plan that is not defined in this Plan, either in Article II. A. (Definitions) or elsewhere, but that is used in the Bankruptcy Code or Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

### 2.    Rules of Interpretation

For purposes of this Plan, (a) whenever from the context it is appropriate, each term, whether stated in the singular or plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to sections, articles or exhibits are references to sections, articles or exhibits of or to the Plan; (e) the words "herein", "hereof", "hereto" or "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to Articles or sections are inserted for convenience or reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

### 3.    Time Periods

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**4.    Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to its conflicts of law provisions or choice of law rules.

**ARTICLE IV**

**UNCLASSIFIED CLAIMS**

Administrative Expense Claims are not classified under this Plan, in accordance with section 1123(a)(1) of the Bankruptcy Code. All Administrative Expense Claims specified in section 507(a)(2) of the Bankruptcy Code as having chapter 11 administration priority, except fees of Professional Persons and/or reimbursement of expenses awarded to Professional Persons pursuant to sections 503, 330 and/or 331 of the Bankruptcy Code, shall be paid in Cash in full by the Debtor (a) upon the later of the Effective Date or the date upon which the Court enters a Final Order allowing such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of business of the Debtor, or (c) upon such less favorable terms as may be agreed between any holder of such Administrative Expense Claim and the Reorganized Debtor.

All Administrative Expense Claims for professional fees and all fee applications by

Professional Persons shall be filed no later than forty five (45) days from the Confirmation Date and all such Claims, to the extent of the Allowed Amount, shall be paid in Cash by the Debtor, subject to the cap agreed upon by the Debtor and the Professional Persons, upon the later of the Transaction Date or the date upon which the Court enters a Final Order allowing such Administrative Expense Claim.

## ARTICLE V

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Classes of Claims and Interests under the Plan are designated and classified as follows:

Class 1:        Priority Tax Claims.

Class 2:        Priority Claims.

Class 3A:       Couak Allowed Secured Claim.

Class 3B:       Bellwether Allowed Secured Claim.

Class 3C:       Cargill Allowed Secured Claim.

Class 3D:       First Pioneer Allowed Secured Claim.

Class 3E:       Kalmbach Allowed Secured Claim.

Class 3F:       Titmus Allowed Secured Claim.

Class 3G:       GMAC Allowed Secured Claim.

Class 3H:       Allowed Secured Tax Claims.

Class 4:        Non-Insider Unsecured Claims.

Class 5:        Insider Unsecured Claims.

Class 6:        Convenience Claims.

Class 7:        Interests.

## ARTICLE VI

## TREATMENT OF CLASSIFIED CLAIMS AND
## INTERESTS UNDER THE PLAN

Class 1:        Class 1 consists of Priority Tax Claims.  Except to the extent that a

Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has

been paid by the Debtor prior to the Effective Date, in full and final satisfaction,

settlement, release, and discharge of and in exchange for release of each such Allowed

Claim, each Holder of such Allowed Claim shall receive on account of such Claim, in

accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular quarterly

installment payments in Cash over a period ending not later than five years after the

Filing Date of a total value, as of the Effective Date, equal to the Allowed amount of

such Claim, which total value shall include simple interest to accrue on any outstanding

balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of

interest determined under applicable non-bankruptcy law pursuant to section 511 of the

Bankruptcy Code, provided that any such payment shall not be less favorable than the

treatment accorded the most favored non-priority unsecured claim provided for by the

Plan.

The holder of an Allowed Priority Tax Claim shall not be entitled to receive any

payment on account of any penalty arising with respect to or in connection with the

Allowed Priority Tax Claim, except to the extent allowed as a part of an Allowed Priority

Tax Claim pursuant to Section 507(a)(2) of the Bankruptcy Code.   Class 1 is not

impaired under the Plan.

Class 2: Class 2 consists of Priority Claims. Holders of Allowed Class 2 Claims shall be paid a deferred Cash payment in the full amount of the Allowed Class 2 Claim, with interest at the prime rate as announced in The Wall Street Journal on the Effective Date plus 1%, on the later of (i) the Transaction Date or (ii) the date such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court. Class 2 is impaired under the Plan.

Class 3A: Couak Allowed Secured Claim

Class 3A consists of the Couak Allowed Secured Claim. As of the Effective Date, $100,000.00 of the outstanding balance due by the Debtor to Couak under the DIP Loan Agreement shall be converted into Class A membership interests in the Reorganized Debtor representing 99.9% of the outstanding membership interests in the Reorganized Debtor. The balance due and owing under the DIP Loan Agreement shall be restated and shall be due pursuant to the terms of the New Couak Note to be issued as of the Effective Date in the form annexed to the Disclosure Statement as Exhibit "B". The New Couak Note shall be secured by a second mortgage on the Titmus Property. Class 3A is impaired under the Plan.

Class 3B: Bellwether LLC Allowed Secured Claim

Class 3B consists of the Allowed Secured Claim of Bellwether, LLC ("Bellwether"). As of the Effective Date, the automatic stay shall be deemed terminated with respect to Bellwether; the Reorganized Debtor shall be deemed to have consented to entry of a judgment of foreclosure in favor of Bellwether in Bellwether's pending foreclosure action against the Widgeon Road House; and Bellwether's lien on the

Jurgielewicz Estates Property shall be deemed extinguished. Class 3B is impaired.

Class 3C:     Cargill Allowed Secured Claim.

Class 3C consists of the Allowed Secured Claim of Cargill Inc. ("Cargill").   As of the Effective Date, the automatic stay shall be deemed terminated with respect to Cargill Inc.  Cargill Inc. shall be permitted to pursue its legal remedies with respect to the Ohio Properties, and Cargill Inc. shall have a Class 4 Claim in the sum of $10,000.00. Class 3C is impaired.

Class 3D:     First Pioneer Allowed Secured Claim.

Class 3D consists of the Allowed Secured Claim of First Pioneer Farm Credit, ACA ("First Pioneer").  Upon the Effective Date, the Debtor will reinstate the maturity of First Pioneer's first mortgage on the Barnes Road Property under Section 1124(2) of the Bankruptcy Code and shall pay such amounts as may be necessary to cure all defaults under such mortgage pursuant to Section 1124(2) of the Bankruptcy Code, including any reasonable legal fees which may be allowed by the Bankruptcy Court and reimbursement of monies expended to cover the Debtor's real property tax and insurance obligations; provided, however, that the interest rate applicable to the debt secured by such mortgage shall be reduced and re-set at six (6%) percent per annum, and the Debtor will not make any cure payment at any default interest rate.   First Pioneer shall retain its security interest on the Barnes Road Property and its liens shall have the same validity and priority that they had prior to the Effective Date, provided, however, that in the event that any real property that is subject to the First Pioneer mortgage is sold as part of the Transaction (the "Sold Property"), First Pioneer shall release its lien on such Sold

Property in exchange for, at the option of the Reorganized Debtor, either (i) a Cash payment on the Transaction Date equal to $15,000.00 per acre of the Sold Property or (ii) a replacement lien on other real property, which replacement lien shall be granted to First Pioneer as of the Transaction Date and which shall secure the amount owed under First Pioneer's existing mortgage on the Sold Property as of the Transaction Date. Class 3D is impaired.

Class 3E: Kalmbach Allowed Secured Claim.

Class 3E consists of the Allowed Secured Claim of Kalmbach Feeds, Inc. ("Kalmbach"). As of the Effective Date, the automatic stay shall be deemed terminated with respect to Kalmbach, and Kalmbach shall be permitted to pursue its legal remedies with respect to the Kalmbach Property. Class 3E is not impaired.

Class 3F: Titmus Allowed Secured Claim

Class 3F consists of the Allowed Secured Claim of Titmus Enterprises ("Titmus"). As of the Transaction Date, the Reorganized Debtor will pay the sum of Nine Hundred Twenty Five Thousand Dollars ($925,000.00) to Titmus in full and final satisfaction of the Titmus Allowed Secured Claim. For the period between the Effective Date and the Transaction Date, (i) Titmus shall retain its security interest in the Titmus Property with the same validity and priority that it had prior to the Effective Date and (ii) the Reorganized Debtor shall continue to make payments pursuant to the Adequate Protection Stipulation agreed upon by the parties and approved by the Court on October 22, 2010. Class 3F is impaired.

Class 3G: GMAC Allowed Secured Claim

Class 3G consists of the Allowed Secured Claim of GMAC. The Reorganized Debtor will reaffirm the GMAC auto loan and GMAC shall retain its lien on the Vehicle with the same validity and priority that it had prior to the Effective Date. Class 3G is not impaired.

<u>Class 3H</u>:       <u>Allowed Secured Tax Claims</u>

Class 3H consists of Allowed Secured Tax Claims. Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment or has been paid by the Debtor prior to the Effective Date, each Holder of such Allowed Secured Tax Claim shall retain its lien with the same validity and priority that it had prior to the Effective Date and shall receive on account of such Claim, in accordance with section 1129(a)(9)(D) of the Bankruptcy Code, regular quarterly installment payments in Cash over a period ending not later than five years after the Filing Date of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, which total value shall include simple interest to accrue on any outstanding balance of such Allowed Secured Tax Claim starting on the Effective Date at the rate of interest determined under applicable non-bankruptcy law pursuant to section 511 of the Bankruptcy Code, provided that any such payment shall not be less favorable than the treatment accorded the most favored non-priority unsecured claim provided for by the Plan.

The holder of an Allowed Secured Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Secured Tax Claim.

While the Debtor's Objection to the Disputed Secured Tax Claim is being

litigated, the Reorganized Debtor shall pay current real estate taxes to the Town/County as they become due and payable, provided, however, that if it is determined in connection with the resolution of the Disputed Secured Tax Claim that the Debtor or Reorganized Debtor overpaid its real estate taxes, any such overpayment shall be applied to the earliest unpaid real estate tax obligations of the Reorganized Debtor. Class 3H is not impaired.

Class 4:     Non-Insider Unsecured Claims

Class 4 consists of the holders of Non-Insider Unsecured Claims.  As of the Transaction Date, the Reorganized Debtor shall contribute the sum of Seventy Five Thousand Dollars ($75,000.00) to an escrow account from which holders of Allowed Class 4 Claims shall be paid on a pro-rata basis as soon as practicable after the Transaction Date.

In the event that the Reorganized Debtor fails to close on the Transaction within three (3) years after the Effective Date of the Plan, holders of Allowed Class 4 Claims shall have their Allowed Class 4 Claims converted to a promissory note in the principal amount of their pro rata share of $75,000.00, bearing a five (5%) percent interest rate, payable by the Reorganized Debtor to such holders on the six (6) year anniversary of the Effective Date. Class 4 is impaired under the Plan.

Class 5:     Insider Unsecured Claims

Class 5 consists of the holders of Insider Unsecured Claims.  Class 5 Claims shall not be entitled to any payment under the Plan.  Class 5 is impaired under the Plan.

<u>Class 6</u>:     <u>Convenience Claims</u>

Class 6 consists of the holders of Convenience Claims.  The Debtor shall pay each Class 6 Claimholder 100% of its Allowed Claim as soon as practicable after the Transaction Date, without interest.   Class 6 is impaired under the Plan.

<u>Class 7</u>:     <u>Interest Holders</u>

Class 7 consists of the Interest Holders.  The only Interest Holder of the Debtor is Benjamin Jurgielewicz.   The Interest owned by Benjamin Jurgielewicz shall be converted into .1% of Class B membership interests in the Reorganized Debtor in consideration for a new value contribution to the Debtor on the Effective Date by Benjamin Jurgielewicz in the sum of $10,000.00.  Class 7 is impaired under the Plan.

**ARTICLE VII**

**CONTROVERSY WITH RESPECT TO IMPAIRMENT**

In the event of a controversy as to whether a Class of Claims or Interests is impaired, the Court shall, after notice and a hearing, determine such controversy.

**ARTICLE VIII**

**MEANS FOR PERFORMANCE OF THE PLAN**

A.     **Shifting Majority of Operations To Ohio and Indiana And Becoming Compliant With SPDES Permit**

Through this Plan, the Debtor intends to pursue a restructuring which would shift the majority of its duck growing operations from Long Island to the Debtor's contract growing farms in Indiana and Pennsylvania.   The Debtor began this process in October 2010.  The Debtor's operations in Long Island would be restricted to its Hatchery and Processing operations.  In conjunction with this shift in operations, the Reorganized

Debtor will seek to promptly consummate the Transaction, under which the Reorganized Debtor would sell a portion of its Long Island real estate holdings to the Town of Brookhaven or Suffolk County or another qualified purchaser. The Debtor believes that through the implementation of this Plan it will (i) become compliant with the terms and conditions of its New York SPDES Permit as a result of the dramatic reduction in duck excrement, and (ii) generate sufficient funds to (x) construct necessary improvements at its Long Island operation and (y) fund creditor claims in the Debtor's Chapter 11 Case.

In the event that the Reorganized Debtor fails to close on the Transaction within three (3) years after the Effective Date of the Plan, such failure to close shall constitute a default on Debtor's obligations remaining under the Plan, and all Claimants to which any obligations remain owing under the Plan shall be entitled to exercise their remedies under applicable law.

**B.    Conversion Of Debtor From A New York Partnership to a New York LLC**

Within five (5) days after the Confirmation Order becomes a Final Order, the Debtor shall file a Certificate of Conversion with the New York Secretary of State which shall convert the Debtor from a New York partnership to a New York limited liability company pursuant to section 1006 of the N.Y. Limited Liability Company Law as authorized by and in accordance with the Conversion Agreement annexed to the Disclosure Agreement as Exhibit "A".   The name of the Reorganized Debtor shall be South Shore Farms, LLC. Pursuant to section 1007 of the N.Y. Limited Liability Company Law, upon conversion to a New York LLC, the Debtor shall for all purposes be the same entity that existed before the

conversion.

Upon the conversion to an LLC, the Reorganized Debtor shall have Class A membership interests, representing 99.9% of the total membership interests in the Reorganized Debtor, and Class B membership interests, representing .1% of the total membership interests in the Reorganized Debtor. Class A membership interests shall be entitled to voting rights as well as distributions of profit and loss. Class B membership interests shall be entitled solely to distributions of profit and loss with no voting rights.

Upon the conversion of the Debtor to an LLC, (i) Couak or its designee shall become the holder of all of the Class A membership interests in the Reorganized Debtor and (ii) the partnership Interest owned by Benjamin Jurgielewicz in the Debtor shall be converted into the Class B membership interest in the Reorganized Debtor and Benjamin Jurgielewicz shall thereafter be the holder of all of the Class B membership interests in the Reorganized Debtor, and (iii) the profit-sharing right held by Paul Jurgielewicz in the Debtor shall be extinguished and Paul Jurgielewicz shall own no interest in the Reorganized Debtor.

**C.     Funding**

The funding of the Plan shall be derived from the Debtor's operations and from the funds to be generated from the Transaction.

**D.     Management of the Reorganized Debtor and Its Property**

The Reorganized Debtor and its property will be managed by Gorguin Shaikoli as Chief Operating Officer and Benjamin Jurgielewicz as General Manager.

**E.     Transfer Taxes**

There will be no Transfer Taxes owed by the Debtor on any transaction in connection with or in contemplation of this Plan.

## ARTICLE IX

### CONDITIONS PRECEDENT TO THE
### EFFECTIVENESS OF THE PLAN

The Effective Date will occur only if all of the following conditions take place:

(i)     the Confirmation Order shall have been entered and become a Final Order, or the Confirmation Order shall have been entered and not stayed; and

(ii)    the conversion of the Debtor to a New York Limited Liability Company.

The Effective Date shall be the first business day on which all of the above conditions are satisfied.

## ARTICLE X

### PROVISIONS REGARDING DISTRIBUTIONS

**A.     Time of Distributions Under the Plan**

Payments and Distributions to be made by the Debtor on the Effective Date shall be made on that date, except as otherwise provided for in the Plan or as may be amended by the Court.

**B.     Payment Dates**

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the next Business Day.

**C.     Manner of Payments Under the Plan**

Payments to be made by the Debtor pursuant to the Plan shall be made in Cash by check drawn on a domestic bank or by wire transfer from a domestic bank.

**D.      Fractional Payments**

Any other provisions of the Plan to the contrary notwithstanding, no payments of fractions of dollars will be made.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down).

**E.      No Cash Payment of Less than One Dollar ($1.00)**

If a Cash Payment otherwise provided for by the Plan to or for the account of any claimant in respect of any Class of Allowed Claims would be less than one dollar ($1.00), notwithstanding any contrary provision of the Plan, no such payment will be made and the Debtor will retain such funds for its own purposes rather than distribute such funds under the Plan.

**F.      Unclaimed Distributions**

In the event that any Distribution under the Plan remains unclaimed for a period of one year after such Distribution has been made (or after such delivery has been attempted) in accordance with the Plan to a holder entitled thereto, such Unclaimed Distribution shall be deemed forfeited by such holder, whereupon all right, title and interest in and to such Unclaimed Distribution will immediately and irrevocably vest in the Reorganized Debtor, and the Reorganized Debtor will thereafter be empowered to take whatever steps may be reasonably necessary to exercise control over the Unclaimed Distribution.

## G. **Disbursing Agent**

The Reorganized Debtor shall act as the Disbursing Agent.

## ARTICLE XI

## PROVISIONS CONCERNING DISCHARGE AND PROPERTY

## A. **Discharge of All Claims**

Except as otherwise provided by this Plan, the rights afforded in this Plan shall be in exchange for complete discharge and release of all Claims of any kind whatsoever arising prior to the Confirmation Date, against the Debtor or any of the Debtor's assets or property; and except as otherwise provided herein, upon the Effective Date, all such Claims against the Debtor shall be satisfied, discharged and released in full; and all Claimants shall be precluded from asserting against the Debtor or its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature whether known or unknown, that occurred prior to the Confirmation Date.

## B. **Vesting of Property**

As of the Effective Date, all assets of the Debtor shall vest in the Reorganized Debtor, free and clear of all Liens, Claims and Interests, except as otherwise provided in this Plan or the Confirmation Order.

## C. **No Successor Liability**

Except as provided in ERISA, neither the Debtor nor the Reorganized Debtor nor Couak shall be determined to be a successor to South Shore Packers, Inc. or any Entity for which South Shore Packers, Inc. may be held legally responsible, or any Entity

which may be an Affiliate of the Debtor by reason of any theory of law or equity, and neither the Debtor nor the Reorganized Debtor nor Couak shall be responsible for any successor or transferee liability of any kind or character. Except as provided in ERISA, neither the Debtor nor the Reorganized Debtor nor Couak shall have any obligation, responsibility, or liability to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of South Shore Packers, Inc. or any Affiliate of the Debtor, whether arising before, on, or after the Confirmation Date.

## ARTICLE XII

## INJUNCTION AND EXCULPATION

### A.    Injunction and Stays

Except as otherwise expressly provided herein and related documents, all persons or entities who have held, hold or may hold Claims against the Debtor are, with respect to any such Claims, permanently enjoined on and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Reorganized Debtor, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtor or the Reorganized Debtor, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entity, or

any property of any such transferee or successor, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or the Reorganized Debtor, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, and (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor or the Reorganized Debtor, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities.

**B.** **Exculpation**

Neither the Debtor nor any of its respective officers, directors, employees and other agents, financial advisors, attorneys and accountants shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct or gross negligence as finally determined by the Bankruptcy Court.

## ARTICLE XIII

## EXECUTORY CONTRACTS AND LEASES

**A.** **Assumption of Executory Contracts and Unexpired Leases of Personal Property**

As of the Effective Date, any executory contract or unexpired lease of personal property entered into by the Debtor that has not yet been (a) assumed and assigned, or

(b) assumed, shall be deemed to be rejected by the Debtor as of the Confirmation Date. The Confirmation Order shall be deemed an order under §365(a) of the Bankruptcy Code rejecting any such executory contracts or leases of personal property.

**B.     Unexpired Real Property Leases**

As of the Confirmation Date, any unexpired real property lease entered into by the Debtor shall be deemed rejected. The Confirmation Order shall be deemed an order under §365(a) of the Bankruptcy Code rejecting any such unexpired real property lease.

**ARTICLE XIV**

**"CRAM DOWN"**

The Debtor will seek to cram down on any non-consenting impaired Class pursuant to section 1129(b) of the Bankruptcy Code.

**ARTICLE XIV**

**GENERAL PROVISIONS AND RETENTION**

**OF JURISDICTION BY THE COURT**

**A.     Post-Confirmation Professional Fees**

Following confirmation, the Reorganized Debtor will be authorized to pay its Professional Persons for post-confirmation services to be rendered and expenses incurred upon submission of their invoices to the Reorganized Debtor. Such Professional Persons will not be required to make application to the Bankruptcy Court with respect thereto, nor will it be necessary that this Court issue orders in connection therewith except, however, in the event that a dispute arises with respect to any fee request, any unresolved disputes

will be heard by the Bankruptcy Court on notice to the Reorganized Debtor.

**B.     Retention of Jurisdiction by the Court**

Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)     To consider any modification of the Plan;

(b)     To determine any and all objections to the allowance of Claims and any and all amendments of the Schedules, including any determination sought by the Debtor during the term of the Plan with respect to the nature, extent, propriety, perfection and/or enforceability of any Lien on any assets of the Debtor;

(c)     To determine any and all applications for allowance of compensation and/or reimbursement of expenses arising out of or related to the Chapter 11 Case for periods prior to the Confirmation Date;

(d)     To determine any and all applications pending on the Confirmation Date for assumption or rejection of executory contracts and unexpired leases to which the Debtor is a party and the allowance of any Claims or requirements to cure arrears resulting therefrom;

(e)     To determine any and all disputes and controversies arising under or relating to the Plan;

(f)     To enforce and administer the provisions of the Plan;

(g)     To determine any and all applications, adversary proceedings and any contested and litigated matters pending until such time as the Debtor's Chapter 11 case is closed; and

(h)     To correct any defect, cure any omission or reconcile any inconsistency in the Plan, the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan and to effectuate payments under this Plan, it being understood and agreed that in the event of any inconsistency, the terms of the Plan shall govern.

**C.** **Prosecution of Objections to Claims;**
**Amendment of Schedules**

The Debtor reserves the right and shall continue to have the authority, subsequent to Confirmation but prior to the case being closed, to object to the Claims of Creditors, amend the Schedules, initiate contested matters and to initiate such proceedings as may be necessary and appropriate in the Bankruptcy Court for the determination of the Allowed Amount of any and all Claims.

**D.** **Headings**

The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

**E.** **Notices**

Any notice, demand, claim or communication under this Plan shall be in writing and shall be deemed to have been given upon receipt by or the personal delivery thereof of service by next day delivery service or upon the seventh day following mailing thereof, if sent by registered mail, return receipt requested, postage prepaid by next day delivery, to the respective address of the parties set forth below, or such other address as the party may specify by notice given as herein provided:

a) if to the Debtor to:

Jurgielewicz Duck Farm
c/o Robinson Brog Leinwand Greene, et al.
875 Third Avenue - 9th Fl.
New York, NY 10022
Attn: Arnold Mitchell Greene, Esq.

Lori A. Schwartz, Esq.

with copies to:

Todtman, Nachamie, Spizz & Johns, P.C.
425 Park Avenue
New York, New York  10022
Attn:   Barton Nachamie, Esq.
        Jill Makower, Esq.

## G.    Severability

Should any provision in this Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability or operative effect of any or all other provisions of this Plan.

## ARTICLE XV

## PROVISIONS CONCERNING CAUSES OF ACTION

The Reorganized Debtor shall retain all rights, claims, and causes of action that have been or may be commenced by the Debtor including, but not limited to, those arising out of Sections 544 through 550 of the Bankruptcy Code or any similar provisions of State Law or any statute or legal theory.  The Reorganized Debtor may, in accordance with its determination of the best interest of the Reorganized Debtor, enforce such claims, rights or causes of action.  Any recovery shall be retained by the Reorganized Debtor.

## ARTICLE XVI
## MODIFICATION OF THIS PLAN

The Plan proponents reserve the right to propose amendments to or modifications of this Plan under section 1127 of the Bankruptcy Code, at any time prior to the Confirmation Date.  After the Confirmation Date, the Plan proponents may modify this Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defects or

omissions or reconcile any inconsistency in this Plan or in the Confirmation Order in such a manner as may be necessary to carry out the purposes and intent of this Plan so long as the rights of Claimants or Interest Holders are not modified or altered without their express written consent.

## ARTICLE XVII
## PROCEDURE FOR RESOLVING DISPUTED CLAIMS

(a)     Objections to Disputed Claims shall be filed with the Bankruptcy Court and served upon each holder of such Disputed Claims to which objections are made not later than sixty (60) days subsequent to the Confirmation Date.

(b)     Disputed Claims shall be divided into two portions: the "Non-Disputed Portion" and the "Disputed Portion." The Debtor shall pay the Non-Disputed Portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class.

(c)     Notwithstanding any other provisions of this Plan, no payments or Distributions shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until all objections to such Disputed Claim are concluded and the Disputed Claim becomes an Allowed Claim.

(d)     The Debtor will reserve and hold sufficient amounts in the Disputed Claim Reserve to pay, in accordance with the provisions of the Plan, the Disputed Portion of each Disputed Claim as if such Disputed Claim was allowed in full.

(e)     Funds held in the Disputed Claim Reserve shall be invested in an interest bearing escrow account.

(f)     When a Disputed Claim is resolved, the Debtor shall pay the holder of the Disputed Claim that portion of the Disputed Claim Reserve equal to the difference between the amount then due of that Allowed Claim pursuant to the Plan less the amount previously paid to said Claimant on the Non-Disputed Portion of its Claim, plus interest actually earned on the amount to be distributed to such Claimant from the Disputed Claim Reserve.

(g)     The Debtor shall have the authority, but not the obligation, to settle Disputed Claims without seeking additional authorization from the Bankruptcy Court.


Dated: New York, New York
       December 30, 2010


**ROBINSON BROG LEINWAND GREENE**      **TODTMAN, NACHAMIE, SPIZZ**
  **GENOVESE & GLUCK, P.C.**             **& JOHNS, P.C.**
Attorneys for **Jurgielewicz Duck Farm**   Attorneys for **Couak Capital Corp.**
  Debtor


**By:** _____      **By:** _____
        Arnold Mitchell Greene (AMG-5900)         Barton Nachamie (BN-6732)
        Lori Schwartz (LS-3246)                   Jill Makower (JM-4842)
        875 Third Avenue                          425 Park Avenue
        New York, NY  10022                       New York, NY  10022
        (212) 603-6300                            (212) 754-9400