ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Avenue
New York, New York 10022
Telephone No.: 212-603-6300

*Attorneys for the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:

JURGIELEWICZ DUCK FARM,

                         Debtor.
-----------------------------------------------------------X

HEARING DATE AND TIME

**April 12, 2011 at 11:00 a.m.**

Chapter 11

Case No.: 10-70231 (DTE)

## NOTICE OF MOTION
## FOR THE ENTRY OF ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) FIXING CLAIM OF CARGILL INCORPORATED AND RESOLVING CARGILL'S MOTIONS: (A) CONVERTING DEBTOR'S CASE FROM CHAPTER 11 TO CHAPTER 7; (B) TERMINATING THE AUTOMATIC STAY; AND (C) PROVIDING FOR PAYMENT OF ADMINISTRATIVE EXPENSES

**PLEASE TAKE NOTICE**, that upon the annexed motion of **Jurgielewicz Duck Farm**, debtor and debtor in possession herein (the "Debtor"), by its attorneys **Robinson Brog Leinwand Greene Genovese & Gluck P.C.** dated March 18, 2011, a hearing (the "Hearing") will be held before **the Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge, at the United States Bankruptcy Court, Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722 in Courtroom 760 on April 12, 2011 at 11:00 A.M.** in the forenoon of that day, or as soon thereafter as counsel can be heard, for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving the Settlement Agreement by and

{00523204.DOC;1 }

between the Debtor and Cargill Incorporated and for such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief sought in the application, must be in writing setting forth the facts and authorities upon which an objection is based, filed with the Clerk of the Court, United States Bankruptcy Court, 290 Federal Plaza, Central Islip, New York 11722, with a copy to Chambers, provided, however, that pursuant to *general order* No. M-462 re Electronic Case Filing Procedures (as amended from time to time), entities with Internet access shall file objections (formatted with Adobe Acrobat) at http://www.nyeb.uscourts.gov., and served so as to be received by the attorneys for the Debtor, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, New York, New York 10022, Attention: A. Mitchell Greene no later than **seven (7) days** prior to the Hearing Date.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned from time to time without further notice except by announcement of such adjournment in open court on the date scheduled for the Hearing.

**DATED:** New York, New York
March 18, 2011

                                  **ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
**Attorneys for Debtor**
875 Third Avenue
New York, New York 10022
Tel. No.: 212-603-6300

By: /s/ A. Mitchell Greene
      **A. Mitchell Greene**

```
ROBINSON BROG LEINWAND GREENE            Hearing Date and Time:
GENOVESE & GLUCK P.C.                    April 12, 2011 at 11:00 a.m.
875 Third Avenue
New York, New York  10022
Telephone: (212) 603-6300
    A. Mitchell Greene
```

*Attorneys for the Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
In re:                                    Chapter 11
                                          Case No.: 10-70231 (DTE)
**JURGIELEWICZ DUCK FARM,**

                            Debtor.
------------------------------------------------------- X

## APPLICATION FOR ENTRY OF ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) FIXING CLAIM OF CARGILL INCORPORATED AND RESOLVING CARGILL'S MOTIONS: (A) CONVERTING DEBTOR'S CASE FROM CHAPTER 11 TO CHAPTER 7; (B) TERMINATING THE AUTOMATIC STAY; AND (C) PROVIDING FOR PAYMENT OF ADMINISTRATIVE EXPENSE

TO THE HONORABLE DOROTHY T. EISENBERG
UNITED STATES BANKRUPTCY JUDGE:

      **Jurgielewicz Duck Farm**, debtor and debtor in possession in the above-captioned case (the "Debtor"), by and through its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., hereby submits this application ("Application"), pursuant to Federal Rules of Bankruptcy Procedure 9019, for an Order of this Court authorizing the Debtor to fix the claim ("Cargill") and resolving Cargill's motions: (a) converting the Debtor's case from Chapter 11 to Chapter 7 (the "Conversion Motion); (b) terminating the automatic stay (the "Stay Motion"); and (c) providing for payment of administrative expense (the "Administrative Claim Motion" and with the Conversion Motion and the Stay Motion, collectively, the "Cargill Motions"). In support

{00522452.DOC;3 }

of the Motion, the Debtor respectfully sets forth as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334. Venue is proper under 28 U.S.C. §157(b)(2).

2. Bankruptcy Code §105 and Rule 9019 of the Bankruptcy Rules provide the statutory basis for the relief requested in this Motion.

## STATEMENT

3. By this Application, the Debtor seeks authority to enter into and obtain Court approval of a certain settlement agreement entered into between the Debtor and Cargill (the "Settlement Agreement'), substantially in the form attached to this Application as <u>Exhibit 1</u>.

4. The Settlement Agreement, among other things, settles and compromises the claims asserted by Cargill against the Debtor, claim no. 21, filed in the amount of $342,364.32 and the demand for payment of administrative claim in the amount of $133,429.10 as well as resolves the Conversion Motion, the Stay Motion and the Administrative Claim Motion for the sum of $400,000, which sum shall be paid from the proceeds of the sale of the Debtor's Ohio property, consisting of 176 acres of land, which property will be sold, subject to higher and better offers, pursuant to a purchase agreement attached as Exhibit A to the sale motion being filed contemporaneously herewith[1]. The balance of sale proceeds in excess of $400,000, up to the amount of $115,000 will be paid to Kalmbach Feeds on account of its claim against the Debtor which claim is purportedly secured on certain of the Ohio parcels, subject to the mortgage held

---

1 The Sale is subject to the assumption of existing leases, including a lease wherein Couak Capital Corp., the Debtor's court approved DIP lender, as tenant, leases approximately 10 acres of land containing pens utilized for farm operations at the Ohio property.

461906  {00522452.DOC;3 }2

by Cargill. The Debtor will dismiss the adversary proceeding commenced against Cargill and Cargill and the Debtor will exchange mutual releases for all claims each may hold against the other and Cargill will release the mortgage it currently holds on certain non-debtor real property in New York.

## BACKGROUND

5.  The Debtor, which was established in 1919, operates a free range duck farm from the premises located at 68 Barnes Road, Moriches, New York.

6.  The Debtor is one of the five major producers of White Peking Ducklings in the country and is the only producer of Free Range Long Island Ducklings in the United States. It is the largest duck producer on Long Island, NY. While the Debtor owns the land from which the farm operates, the town and counties of Brookhaven and Suffolk purchased the development rights to the farm land in May 2007.

7.  The Debtor owns several parcels of real property in New York from which it operates its farm and a house located approximately five (5) miles from the main farm. The Debtor also owns three (3) parcels of property in Ohio. Cargill holds an open-end mortgage on the Ohio property. As set forth herein, Kalmbach Feeds holds a mortgage subordinate to Cargill on certain of the Ohio parcels.

8.  The Debtor and an affiliated corporation, South Shore Packers, Corp., filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on **January 12, 2010** (the "Petition Date"). On January 26, 2010, the Debtor filed its schedules of assets and liabilities, and list of creditors and executory contracts required pursuant to section 521 of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

9. The Debtor has continued to manage and operate its business pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, albeit in a limited capacity. No Committee of unsecured creditors was formed by the Office of the United States Trustee in this case.

10. On February 12, 2010, Cargill filed its unsecured proof of claim no. 21 in the amount of $342,364.32, based upon a judgment filed on December 23, 2009. Thereafter, on November 8, 2010, Cargill amended its claim to assert its claim as secured by a lien on property valued at $220,000, leaving $122,364.32 of its claim as unsecured.

11. On or about October 5, 2010, Cargill filed its Conversion Motion, Stay Motion and Administrative Claim Motion seeking payment of purportedly delinquent post – petition invoices in the amount of $133,429.10 with respect to feed provided to the Debtor.

12. The Debtor submitted its opposition to the Cargill Motions asserting, amongst other defenses, that Cargill provided the Debtor with defective feed, substantially damaging its operations. The Debtor also commenced an adversary proceeding against Cargill with respect to the defective feed. The Cargill adversary proceeding was stayed pursuant to an order of this Court entered on or about January 18, 2011, pending completion of arbitration proceedings.

13. The Conversion Motion, the Stay Motion and the Administrative Claim Motion are still pending, and have been carried to April 12, 2011, the return date of the instant motion.

14. Cargill and the Debtor have engaged in extensive settlement negotiations in order to globally resolve Cargill's pre and post petition claims and the Conversion Motion and Stay Motion and each believe that fixing Cargill's claim in the amount of $400,000 and seeking approval of a sale of the Ohio parcels as the mechanism for the payment of the Cargill claim is in the best interests of the estate.

**Statement of Law**

15. Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 US 414, 424 (1968). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally, which is to encourage settlements." *In re Jackson Brewing Company*, 624 F.2d 599 (5th Cir. 1980). "Resolution of claims through settlement furthers the goals of Bankruptcy Administration to liquidate estate assets as rapidly as possible, consistent with obtaining the best possible realization upon available assets, and without undue waste without needless or fruitless litigation". *In re Carla Leather, Inc.* 44 B.R. 457, 471(Bankr. S.D.N.Y 1984); aff'd, 50 B.R. 764 (S.D.N.Y. 1985). While the Debtor is free to pursue litigation on behalf of the estate "[i]t is to exercise prudence, and at the same time be in a position so as to act on settlement opportunity, when that opportunity arises." *Id.* 44 B.R. at 472.

16. Bankruptcy Rule 9019(a) permits the Court to approve a compromise or a settlement. The Rule provides:

> Compromise. On motion of a trustee after notice and a hearing, the court may approve a compromise or a settlement. Notice shall be given to creditors, the debtor, and indentured trustees as provided in Rule 2002, and to any other entity as the Court may direct.

17. Neither Bankruptcy Rule 9019 nor any other section of the Code explicitly sets forth the standards by which a Court is to evaluate a proposed settlement for approval.

18. However, the standards for approval of settlements in bankruptcy are well established in precedent, focusing on the proposed settlement's reasonableness and fairness to

creditors. In *Anderson,* 390 U.S. 414, the seminal case for approval of settlements in bankruptcy cases, the Supreme Court concluded that the Trial Court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> "There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the Bankruptcy Judge has appraised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the Judge should form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation."

*Anderson,* 309 U.S. at 424 (citations omitted).

19. The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Judge "is not to decide the numerous questions of law and fact raised by Appellants, but rather to canvas the issues and see whether this settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983). *See, also, In re Purified Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990). The assessment of a settlement only requires identification of the issues and controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather,* 44 B.R. at 470.

20. In considering a proposed settlement, the Court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if in order to approve a settlement, Bankruptcy Courts were required to conduct an exhaustive investigation in

determination of the underlying claims" in order to approve a settlement. *Purified Down Products,* 150 B.R. 522-523. In *Carla Leather,* the Court explained the policy underlying the abridged review of settlements in bankruptcy as follows:

> "The very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This could hardly be achieved if the test and a hearing for approval meant establishing success or failure to a certainty."

*Carla Leather,* 34 B.R. at 470; *See, also, Purified Down Products,* 150 B.R. at 522-523.

21. In evaluating the propriety of a settlement in concert with the foregoing factors, the Court need not conduct a trial on the merits (nor a "mini-trial", nor a "rehearsal" of the trial"), to actually resolve the extant factual and legal issues. The Court must simply determine whether, considering all of the relevant issues, the settlement is reasonable. *Neiman v. Stein,* 464 F.2d 689, 692 (2d. Cir. 1972). *See, also,* International Distribution Centers, Inc., 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (*"Drexel I"*). These issues may include the Court's familiarity with the history of the case, the complexity of the claims alleged, the status of the parties, and the context in which the claims arose. *See, Anderson,* 390 U.S. at 144; *Purified Down Products,* 150 B.R. at 519, 525; *International Distribution Centers,* 103 B.R. at 423.

22. The settlement evaluation process is not designed to substitute the Court's judgment for that of the Debtor. *Carla Leather,* 44 B.R. at 465. While the Court is not expected to "rubber stamp", the Debtor's proposed settlement, *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), the Court should give considerable weight to the Debtor's informed judgment that a compromise is fair and equitable. *Anderson,* 390 U.S. at 444; *International*

*Distribution Centers*, 103 B.R. at 423; *Drexel I*, 134 B.R. at 496; *Carla Leather*, 44 B.R. at 472. As articulated by the District Court in *International Distribution Centers*, when determining the wisdom of a compromise, the Court should give weight to not only the Debtor's opinion, but to those of other counsel to a settlement as well. *International Distribution Centers*, 103 B.R. at 423. Ultimately, a Court should consider both the proponent's opinions as well as its own independent valuation of the arguments for and against the settlement in order to determine whether a settlement should be approved. *Purified Down Products*, 150 B.R. at 523.

23. The Court, apprised of the facts of the controversy and risks and costs of litigation, is bestowed with broad discretion to approve settlements which fall within the range of reasonableness. *Purified Down Products*, 150 B.R. at 523-24; *In re Texaco, Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant*, 699 F. 2d at 6; *Newman & Stein*, 464 F2d at 393; *Purified Down Products*, 150 B.R. at 523-24. The concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion". *Newman v. Stein*, 464 F2d at 693. Thus the Court need not insist upon the best possible settlement, but may approve a settlement that was within the range of reasonableness under the circumstances.

24. In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interest of creditors, Courts in the Second Circuit follow the analysis first articulated by the Supreme Court in *Anderson*, is developed and applied by the case law. In so following, Courts judge a proposed settlement based on consideration of some or all of the following

factors:

(i) The relative benefits to be received by creditors under the proposed settlement;

(ii) The likelihood of success in litigation compared to the present and future benefits offered by the proposed settlement;

(iii) The prospect of complex and protracted litigation if settlement is not approved;

(iv) The attendant expense, inconvenience and delay of litigation;

(v) The probable difficulties of collecting on any judgment that might be obtained;

(vi) The competency and experience of counsel who support the proposed settlement;

(vii) The extent to which the settlement is a product of arms-length bargaining and not the product of fraud or collusion;

(viii) The nature and breadth of any releases to be issued as a result of the proposed settlement; and

(ix) The paramount interest of the creditors and proper deference to their reasonable views.

*See, City of Detroit v. Grinnell Corp.*, 495 F2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993); *In re Purified Down Products*, 150 B.R. at 522; *International Distribution Centers*, 103 B.R. at 422; *In re Fugazy*, 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel I*, 134 B.R. at 497; *In re Drexel Burnham Lambert Group*, 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991) ("Drexel II"); *Crowthers McCall*, 102 B.R. at 387; *Texaco*, 84 B.R. at 901; *Lion Capital Group, Inc.*, 49 B.R. 163, 173 (Bankr. S.D.N.Y. 1985); *Carla Leather*, 44 B.R. at 466; *In re W.T. Grant Company*, 699 F2d, 599 (2d. Cir. 1983); *See, also, In re Jackson Brewing Company*, 624 F.2d 599, 602 (5th Cir. 1980); *Drexel v. Loomis*, 35 F.2d 800, 808 (8th Cir. 1929).

25. Application of the relevant factors should leave this Court with the inescapable conclusion that the settlement and compromises embodied in the proposed settlement between the Debtor and Cargill are well above the lowest point in range of reasonableness, and should be approved as fair and equitable and in the best interest of creditors.

26. The settlement allows Cargill and the Debtor to avoid the costs and delays attendant with continued litigation of the Cargill Motions and the adversary proceeding through the arbitration process and mutual releases will be exchanged by and between Cargill and the Debtor with respect to all claims. The Cargill Claim will be fixed at the reduced amount of $400,000 and will be funded through the sale of the Ohio property. Further, the proposed sale of the Ohio parcels will result in proceeds in excess of the fixed Cargill claim of $400,000 which will be utilized to satisfy other creditors. In this instance, the balance of the sale proceeds above $400,000, up to $115,000, will be utilized to satisfy the claims of a subordinate lien creditor, Kalmbach Feed, thereby further reducing the totality of claims asserted against the Debtor's estate.

27. With respect to the merits of the Cargill adversary proceeding, it is clear that the arbitration with Cargill will be complex, costly and protracted. The Debtor believes that even if it were successful in whole or in part, the benefits to creditors would be greatly reduced by the significant time and costs of proceeding with the arbitration.

28. For the reasons set forth above, the Debtor believes that the settlement with Cargill, including the dismissal of the pending Cargill Motions and the adversary proceeding, the release by Cargill of its mortgage against non-debtor property and the exchange of mutual releases by and between Cargill and the Debtor is proper and in the Debtor's best interest, as well

as in the best interest of the estate.

29. Accordingly, the Debtor requests that the settlement be approved, and that the Settlement Agreement in the form annexed hereto as Exhibit 1, be approved by the Court.

**WHEREFORE**, the Debtor respectfully requests that the proposed compromise with Cargill be approved by the Court, along with such other and further relief as the Court deems just and proper.

**DATED:** New York, New York
March 18, 2011

                **ROBINSON BROG LEINWAND GREENE
                 GENOVESE & GLUCK P.C.**
                **Attorneys for the Debtor**
                875 Third Avenue
                New York, New York 10011
                212-603-6300


                By: /s/ A. Mitchell Greene
                  **A. Mitchell Greene**

# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Agreement") is made by and between Jurgielewicz Duck Farm a/k/a Jurgielewicz Duck Farm a New York Partnership a/k/a Jurgielewicz Duck Farm L.P. ("JDF"), Couak Capital Corp. ("Couak"), Benjamin Jurgielewicz a/k/a Thomas Jurgielewicz a/k/a Tom Jurgielewicz ("Jurgielewicz"), Jurgielewicz Estates, LLC ("Estates") and Cargill, Incorporated ("Cargill"). JDF, Couak, Jurgielewicz, Estates and Cargill may hereinafter individually be referred to as a "Party" an collectively as the "Parties."

WHEREAS, JDF, owned and operated by Jurgielewicz , filed for Chapter 11 protection under 11 U.S.C Section 101, *et seq* (the "Bankruptcy Code") on January 12, 2010 ("Petition Date"),in the United States Bankruptcy Court, Eastern District New York, under Case No. 8-10-70231-dte, and has continued to operate as a Debtor-in-Possession since the Petition Date; and

WHEREAS, Couak has extended post-petition financing to JDF by authority and approval of the United States Bankruptcy Court, Eastern District New York (Hon. Dorothy T Eisenberg, U.S.B.J.); and

WHEREAS, in connection with the bankruptcy case of JDF, Cargill filed a Proof of Claim on February 12, 2010, and amended said claim on November 8, 2010, in the amount of $342,364.32, for sales of products and services to JDF prior to the Petition Date ("Proof of Claim"); and

WHEREAS, in connection with the bankruptcy case of JDF, Cargill has filed multiple motions, including a Motion to Terminate the Automatic Stay pursuant to 11 U.S.C. Section 362 ("Lift Stay Motion"), a Motion to Convert the case to one under Chapter 7 pursuant to 11 U.S.C. Section 1112 ("Conversion Motion"), and a Motion for Payment of an Administrative Claim pursuant to 11 U.S.C Section 503 ("Administrative Claim Motion") (collectively referred to as the "Bankruptcy Motions"); and

WHEREAS, JDF has filed opposition to the Bankruptcy Motions; and

WHEREAS, Cargill, subsequent to the Petition Date, made certain sales of feed to JDF and there is an unpaid balance owed on said post petition sales of $133,429.10 ("Administrative Claim"), secured by a mortgage given to Cargill by Estates on March 17, 2010, and recorded in

the Suffolk County Clerk's Office on March 23, 2010, in Liber M00021930 at Page 170 (the "Mortgage"); and

WHEREAS, on October 8, 2010, JDF filed an Adversary Proceeding in the United States Bankruptcy Court, Eastern District of New York under Adversary Proceeding No. 8-10-08618-dte against Cargill related to Cargill's delivery of duck feed and nutritional advice to JDF and is seeking recovery of, among other relief, actual and punitive damages related to the alleged defective feed and advice (the "Feed Claim"); and

WHEREAS, on January 18, 2011, the Feed Claim was stayed pending completion of arbitration proceedings; and

WHEREAS, in connection with an action commenced against Jurgielewicz by Cargill in New York State Supreme Court, in and for the County of Erie under index number 2009/12248 a judgment was entered against Jurgielewicz on December 23, 2009, in the amount of $339,915.44 ("Judgment"); and

WHEREAS, JDF, Couak, Jurgielewicz and Cargill (collectively, "the Parties") have agreed to a final and binding settlement of the Bankruptcy Motions, Proof of Claim, Administrative Claim, Feed Claim and Judgment (collectively referred to herein as the "Claims"), as well as other claims and matters covered by this Agreement;

NOW, THEREFORE, in consideration of the recitals that are incorporated herein, and for the mutual consideration described below, the receipt and sufficiency of which are acknowledged, the Parties hereby agree as follows:

1. In full and final resolution of the Claims, it is hereby agreed that Cargill shall receive an allowed claim in the amount of $400,000 (the "Settlement Sum"), which Settlement Sum shall be paid from the proceeds of the sale of certain real estate in the State of Ohio, owned by JDF, comprised of 176 acres, more or less, as more particularly described in a certain Open End Mortgage given to Cargill by JDF on August 18, 2008, and recorded August 21, 2008, in the Wood County [Ohio] Official Record Volume 2856 at Page 832. In exchange for the Settlement Sum, (1) the Bankruptcy Motions and the Feed Claim will each be dismissed with prejudice, (2) Cargill shall cause to be filed, a discharge of the Mortgage and (3) the Parties will exchange releases as more fully set forth herein.

2. Cargill shall release and forever discharge JDF, Couak, Jurgielewicz and Estates, their collective insurers, agents, representatives, attorneys, successors, and assigns from any and all suits, debts, losses, contracts, damages, judgments, executions, claims, counterclaims,

actions, causes of action, proceedings or demands of any kind whatsoever, whether at law or in equity, based on tort, contract, statute or otherwise, known or unknown, that they have, had or may have, or claim to have, upon or by reason of, arising out of, or in connection with all claims that were asserted or could have been asserted in this matter including, but not limited to, claims relating to or arising from the delivery of duck feed and nutritional advice given by Cargill to JDF.

3. JDF, Couak, Jurgielewicz and Estates, their collective insurers, agents, representatives, attorneys, successors, and assigns, shall release and forever discharge Cargill and its directors, officers, employees, insurers, agents, attorneys, representatives, successors, assigns, and affiliates and parent, subsidiary and related corporations from any and all suits, debts, losses, contracts, damages, judgments, executions, claims, counterclaims, actions, causes of action, proceedings or demands of any kind whatsoever, whether at law or in equity, based on tort, contract, statute or otherwise, known or unknown, that they have, had, or may have, or claim to have, upon or by reason of, arising out of, or in connection with all claims that were asserted or could have been asserted in this matter including, but not limited to, claims relating to or arising from the delivery of duck feed and/or nutritional advice given by Cargill or its affiliates, representatives, agents, or employees, to JDF.

4. In the event Kalmbach Feeds, Inc. objects to the settlement, nothing contained herein shall limit Cargill from seeking to recover additional interest, costs and fees from any proceeds of the sale of the Ohio Property in excess of $400,000, but in no event more than $115,000.

5. This Agreement is subject to Bankruptcy Court approval.

6. Each signatory and party represents and warrants that he or she is authorized to sign this Agreement, and that they have the legal and binding authority to enter into this Agreement and to release all claims stated herein on behalf of all persons identified herein.

7. In the event that any provision or part thereof of this Agreement shall be held void or unenforceable, the remaining provisions hereof shall remain in full force and effect.

8. The Parties acknowledge that they have read this Agreement and that they understand and fully agree to each and every provision hereof; and that each of them has been represented by counsel in connection with entering into this Agreement.

9. It is understood and agreed that this Agreement may be executed in several counterparts, each of which shall, for all purposes, be deemed to be an original and all of such

counterparts, taken together, shall constitute one and the same Agreement, even though all the parties hereto may not have executed the same counterpart of this Agreement.

10. This Agreement may not be modified or amended in any manner, except by written agreement signed by each party hereto.

11. It is expressly understood that by entering into this Agreement, the Parties intend to settle and resolve all disputes by and between the Parties herein which arose from the beginning of time to the date all the terms, obligations and conditions of this Agreement are met and fully completed.

12. The releases contained in this Agreement shall be effective only once all the terms, obligations and conditions of each of the individual Parties have been met and fully completed and the releases shall bind the Parties herein, their successors, assigns, officers, employees and agents.

13. This Agreement shall be construed in accordance with the plain meaning of its language and neither for nor against the drafting party.

14. This Agreement shall be construed and enforced under the laws of the State of New York, notwithstanding New York's rules relating to choice of law or conflicts of laws.

15. This Agreement sets forth the entire and complete agreement by the Parties. No oral representation and no prior oral or written matters extrinsic to this Agreement shall have any force or effect as to the provisions of this Agreement. All prior and contemporaneous discussions, negotiations, and agreements between such parties with respect to the Agreement are superseded or are deemed merged into this Agreement.

IN WITNESS WHEREOF, the Parties have signed this Agreement on the dates indicated opposite their signatures, and the same shall become effective on the date of the last signature hereto, and having affixed their signatures hereto indicate their acceptance and understanding of the terms and conditions of this Agreement.

Jurgielewicz Duck Farm a/k/a Jurgielewicz Duck Farm a New York Partnership a/k/a Jurgielewicz Duck Farm, L.P.

By:_____

Name:_____

Its:_____


Jurgielewicz Estates, LLC

By:_____

Name:_____

Its:_____


Couak Capital Corp.

By:_____

Name:_____

Its:_____


Cargill, Incorporated

By:_____

Name:_____

Its:_____


Benjamin Jurgielewicz a/k/a Thomas Jurgielewicz a/k/a Tom Jurgielewicz


_____