**ROBINSON BROG LEINWAND GREENE**
**GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022

*Attorneys for the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re:

**JURGIELEWICZ DUCK FARM,**

                                             Debtors.
------------------------------------------------------X

Chapter 11

Case No.: 10-70231 (DTE)
(Jointly Administered)

### NOTICE OF MOTION
### FOR ORDER AUTHORIZING THE DEBTOR TO SELL REAL PROPERTY LOCATED AT MCCUTCHEONVILLE ROAD, WAYNE, OHIO

**PLEASE TAKE NOTICE,** that upon the annexed motion (the "Motion") of

**Jurgielewicz Duck Farm**, debtor and debtor in possession herein (the "Debtor"), by its attorneys

**Robinson Brog Leinwand Greene Genovese & Gluck P.C.** dated March 18, 2011, a hearing

(the "Hearing") will be held before **the Honorable Dorothy T. Eisenberg, United States**

**Bankruptcy Judge, at the United States Bankruptcy Court, Eastern District of New York,**

**290 Federal Plaza, Central Islip, New York 11722 in Courtroom 760 on April 12, 2011 at**

**11:00 A.M.** in the forenoon of that day, or as soon thereafter as counsel can be heard, for an

order pursuant to Section 363 of Title 11 of the United States Code (the "Bankruptcy Code")

authorizing the Debtor to sell real property consisting of 176 acres of land and improvements

thereon known as McCutcheonville Road, Wayne Ohio (the "Ohio Property"), as more

specifically set forth in the Motion and Purchase Agreement attached hereto, subject to higher

and better offers, free and clear of any and all liens, claims encumbrances and interests and such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that all bids for the purchase of the Ohio Property shall be submitted in writing to Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, New York, New York 10022, no later than April 6, 2011 at 5:00 p.m. Each prospective purchaser shall submit its written bid with proof of financial capability of the offeror which bid shall accompanied by a deposit by certified check in an amount of ten (10%) percent of the bid and said deposit shall be paid to Debtor's counsel to be held in escrow by Debtor's counsel, pending the Bankruptcy Court's determination on the sale of the Ohio Property, and (a) applied toward the purchase price if the bid is accepted and automatically deemed non-refundable; or (b) refunded in full at the end of the hearing if the bid is not accepted. The bid shall also provide that the transaction shall be consummated within thirty (30) days of entry of an Order approving the bid. In the event the bidder is the second highest or better bidder, Debtor's counsel shall retain the deposit pending the closing with the highest or best bidder and in the event the winning bidder fails to close within thirty (30) days of the entry of the Order, the second bidder shall be obligated to close within thirty (30) days after notice from the Debtor's counsel.

**PLEASE TAKE FURTHER NOTICE**, that the Bankruptcy Court shall retain jurisdiction to determine all matters arising out of or relating to any objection to the relief requested in the Motion and each person or entity making such an objection or bid at the hearing shall be governed by the conditions set by the Bankruptcy Court and subject itself to the jurisdiction of the Bankruptcy Court in reference to all matters arising out of its objection and all matters related thereto.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief sought in the Motion, must be in writing setting forth the facts and authorities upon which an objection is based, filed with the Clerk of the Court, United States Bankruptcy Court, 290 Federal Plaza, Central Islip, New York 11722, with a copy to Chambers, provided, however, that pursuant to *general order* No. M-462 re Electronic Case Filing Procedures (as amended from time to time), entities with Internet access shall file objections (formatted with Adobe Acrobat) at http://www. nyeb.uscourts.gov., and served so as to be received by the attorneys for the Debtor, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, New York, NY 10022 Attn: A. Mitchell Greene, Esq., no later than **seven (7) days** prior to the Hearing Date.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned from time to time without further notice except by announcement of such adjournment in open court on the date scheduled for the Hearing.

**DATED:** New York, New York
March 18, 2011

                    **ROBINSON BROG LEINWAND GREENE**
                      **GENOVESE & GLUCK P.C.**
                    **Attorneys for Debtors**
                    875 Third Avenue
                    New York, New York 10022
                    By: /s/ A. Mitchell Greene
                        **A. Mitchell Greene**

| UNITED STATES BANKRUPTCY COURT | **Hearing Date:** April 12, 2011 |
| EASTERN DISTRICT OF NEW YORK | **Hearing Time:** 11:00 a.m. |

-------------------------------------------------------X

In Re:                                                     Chapter 11

**JURGIELEWICZ DUCK FARM,**                 Case No. 8-10-70231-DTE

                        Debtor.

-------------------------------------------------------X

## MOTION FOR ORDER (I) AUTHORIZING DEBTOR TO SELL ASSETS OF THE ESTATE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. SECTION 363(b) AND (f), SUBJECT TO CERTAIN ASSUMED ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

TO THE HONORABLE DOROTHY T. EISENBERG,
UNITED STATES BANKRUPTCY JUDGE:

The debtor, **Jurgielewicz Duck Farm,** (the "Debtor"), by its attorneys **Robinson Brog Leinwand Greene Genovese & Gluck P.C.**, seeks approval of the sale of its real property located at Montgomery Township, Wood County, Ohio, in accordance with the Purchase Agreement attached hereto as Exhibit A, subject to higher and better offers pursuant to sections 105, 363(b), (f) and (m), 365 and 1146 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and represents as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this civil proceeding is vested in the United States District Court

for this District pursuant to section 1334 of title 28 of the United States Code.

2.      Venue of this proceeding is proper pursuant to 28 U.S.C. §1409.  This is a core

proceeding arising under title 11 of the United States Code.  *See* 28 U.S.C. § 157(b)(1).  The

statutory predicates for the relief sought herein include sections 105, 363 and 365 of the

Bankruptcy Code.

## THE DEBTOR

### Background.

3.      The Debtor, which was established in 1919, operates a free range duck farm from

the premises located at 68 Barnes Road, Moriches, New York.

4.      The Debtor is one of the five major producers of White Peking Ducklings in the

country and is the only producer of Free Range Long Island Ducklings in the United States.  It is

the largest duck producer on Long Island, NY.   While the Debtor owns the land from which the

farm operates, the town and counties of Brookhaven and Suffolk purchased the development

rights to the farm land in May 2007.

5.      The Debtor owns several parcels of real property in New York from which it

operates its farm and a house located approximately five (5) miles from the main farm.  The

Debtor also owns three (3) parcels of property in Ohio.  The subject Ohio parcels are encumbered

by an open end mortgage held by Cargill, Incorporated ("Cargill") and a subordinate mortgage held by Kalmbach Feeds, Inc ("Kalmbach"). The Ohio parcels consists of 176 acres of land and certain improvements thereon, known as McCutcheonville Road, Wayne, Ohio, Parcel Numbers: 145-412-170000012000 (44.00 acres); 145-412-170000013000 (12.00 acres); and 145-412-170000015000 (120.00 acres) (collectively, the "Ohio Property"). Couak Capital Corp., the debtor in possession lender, also holds a subordinate lien on the Ohio Property in connection with the DIP credit agreement. Couak consents to the proposed sale of the Ohio Property.

6.     The Debtor and an affiliated corporation, South Shore Packers, Corp., filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on **January 12, 2010** (the "Petition Date"). On January 26, 2010, the Debtor filed its schedules of assets and liabilities, and list of creditors and executory contracts required pursuant to section 521 of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

7.     The Debtor has continued to manage and operate its business pursuant to sections 1107 and 1108 of the Bankruptcy Code, albeit in a limited capacity. No Committee of unsecured creditors was formed by the Office of the United States Trustee in this case.

## SUMMARY OF RELIEF REQUESTED

8.     This motion seeks approval of the sale of the Ohio Property to Chad Reynolds as purchaser (the "Purchaser"), subject to higher and better offers, for the purchase price of $515,000, free and clear of any and all claims, liens, encumbrances and other interests, but subject to existing leases (the "Assumed Leases"). The Assumed Leases consist of (1) a lease

{00523175.DOC;2 }460686

3

between the Debtor and Gary Reynolds for the use of 140 acres of land for agriculture purposes[1]; and (2) a lease between the Debtor and Couak Capital Corp., the Debtor's court approved DIP lender, for the use of 10 acres of land and pens for the hatching and raising of poultry.

9.     As will be set forth herein, the sale of the Ohio Property to Purchaser pursuant to the terms of the Purchase Agreement by and between the Debtor, as seller, and the Purchaser, or such other entity or entities as may submit a higher or better offer for the Ohio Property, at or prior to the hearing to consider the Sale, is in the best interests of the Debtor, its estate and its creditors and will result in the Debtor realizing maximum value for its Ohio Property. A copy of the Purchase Agreement is annexed hereto as Exhibit A.

10.     The Debtor respectfully requests that the Court enter an order authorizing the Debtor to sell to the Purchaser, or such other entity or entities as may submit a higher or better offer for the Ohio Property at the hearing to consider the Sale, free and clear of any and all claims, liens, encumbrances and other interests, but subject to the Assumed Leases; and (ii) authorizing the entry into and approving the Purchase Agreement.

## PROPOSED SALE OF THE OHIO PROPERTY

11.     Pursuant to a 9019 motion returnable contemporaneously with this sale motion, the Debtor has resolved an ongoing dispute with Cargill, fixing Cargill's claim in the amount of $400,000 and providing for the payment of the Cargill allowed claim through the sale of the Ohio Property. The $515,000 purchase price for the sale of the Ohio Property is in excess of the

---

[1] Gary Reynolds is the proposed Purchaser's father

$400,000 Cargill allowed claim amount which excess proceeds shall be utilized by the Debtor to partially satisfy the claim of Kalmbach[2]. Debtor by this motion seeks approval of the sale of the Ohio Property. The Debtor submits that it is in the best interests of its creditors and its estate to seek approval of the Sale of the Ohio Property in order to maximize its value and utilize the proceeds to satisfy the Cargill claim and a portion of the Kalmbach claim, thereby reducing the totality of claims asserted against the Debtor's estate.

12.     The Debtor believes that the terms of the proposed sale will result in it obtaining the maximum value for the Ohio Property.

## THE PURCHASE

13.     The Purchase Agreement provides for the sale of the Ohio Property subject to the Assumed Leases. The Court and interested parties are respectfully referred to the Purchase Agreement for a full recitation of the terms and conditions of the transaction.

14.     The purchase price is $515,000 which sale proceeds will be utilized to satisfy the claims of Cargill and Kalmbach.

15.     The sale is contingent upon, among other things, bankruptcy court approval in the Debtor's bankruptcy case. The sale is also contingent upon obtaining a closing taking place no later than June 3, 2011.

---

2 Kalmbach on the face of its secured claim no. 64, dated 11/11/10, filed in the amount of $323,979.88, sets forth that the value of the Ohio Property is $449,500.00.

## APPROVAL OF SALE

16.     Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "the Debtor, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate". 11 U.S.C. § 363(b)(1).

17.     Section 363 does not set forth an express standard for determining whether a sale of property under section 363(b) should be approved; however, courts that have interpreted this section consistently apply an "articulated business judgment" standard. *See Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (Bankr. 9th Cir. 1988); *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

18.     The Court of Appeals for the Second Circuit first enunciated this standard by stating:

> The rule we adopt requires that a judge determining
> a § 363(b) application expressly find from the
> evidence presented before him at the hearing *a good
> business reason* to grant such application.

*Lionel*, 722 F.2d at 1070-71 (emphasis added).

19.     Section 363(b) of the Bankruptcy Code does not require that the Court substitute its business judgment for that of the Debtor. *See, e.g. Ionosphere Clubs*, 100 B.R. at 676 (court will

{00523175.DOC;2 }460686

6

not substitute a hostile witness's business judgment for a debtor's, unless testimony "established that the [debtor] had failed to articulate a sound business justification for its chosen course"). Rather, the Court should ascertain whether a debtor has articulated a valid business justification for the proposed transaction. This is consistent with "the broad authority to operate the business of the Debtor . . . [which] indicates congressional intent to limit Court involvement in business decisions by a Trustee . . . [so that] a Court may not interfere with a reasonable business decision made in good faith by a Trustee". *In re Airlift Int'l., Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

20. Other courts have approved the sale of a debtor's assets under §363(b)(1) of the Bankruptcy Code when (i) the sale is supported by the sound business judgment of the debtor's management; (ii) interested parties are provided with adequate and reasonable notice; (iii) the sale price is fair and reasonable; and (iv) the purchaser has acted in good faith. *See, e.g., In re Betty Owens Schools, Inc.*, WL 188127 at *4 (S.D.N.Y. 1997) (setting forth the foregoing four elements in connection with the 363(b)(1) inquiry and citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re General Bearing Corp.*, 136 B.R. 361, 365-66 (Bankr. S.D.N.Y. 1992) (suggesting that the salient factors under *Lionel* are the foregoing elements). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Ames Dept. Stores, Inc.*, 136 BR 357, 359 (Bankr. S.D.N.Y. 1992); *In re Integrated Resources, Inc.*, 147 B.R. at 656-57 (S.D.N.Y. 1992) (a debtor's business

judgment is entitled to substantial deference with respect to the procedures to be used in selling

assets from the estate). The Debtor has determined that the maximization of the return to

creditors can best be accomplished through the proposed sale upon the terms contained in the

Purchase Agreement and that the transaction is in the best interests of its estate, and thus should

be approved by the Court.

21.    In determining whether a "sound business purpose" exists with respect to a sale of

assets prior to confirmation of a plan, Courts have looked at such factors as:

> the proportionate value of the asset to the estate as a
> whole, the amount of elapsed time since the filing,
> the likelihood that a plan of reorganization will be
> proposed and confirmed in the near future, the
> effect of the proposed disposition on future plans of
> reorganization, the proceeds to be obtained from the
> disposition vis-à-vis any appraisals of the property,
> which of the alternatives of use, sale or lease the
> proposal envisions, and most importantly perhaps,
> whether the asset is increasing or decreasing in
> value.

*Lionel*, 722 F.2d at 1071.

22.    In the Debtor's business judgment, the relief sought will maximize the Debtor's

recovery on the sale of the Ohio Property and is therefore in the best interests of its estate.

23.    After extensive negotiations, the Debtor has resolved the Cargill claim, as more fully

set forth in the 9019 motion being filed contemporaneously herewith. The sale of the Ohio

Property is the mechanism for the funding of the $400,000 Cargill claim, and, the partial

satisfaction of the Kalmbach claim. The Debtor has no other resources with which to satisfy

these claims and submits that the proposed sale provides a greater benefit to the estate, as it will satisfy Cargill's claim and provide for a substantial recovery to Kalmbach on account of its claim. The only alternatives to the proposed sale would be to either consent to Cargill's stay motion, or deeding the property to Cargill in lieu of a foreclosure proceeding. As the proposed sale provides for recovery to Cargill and Kalmbach, the sale scenario results in the greater benefit to the estate and creditors.

## The Debtor Has Exercised Sound Business Judgment

24. The Debtor believes that the Sale to Purchaser represents a prudent and proper exercise of its business judgment and is supported by articulated business reasons because, absent such a sale, the Debtor has no ability to satisfy the Cargill claim. The proposed Sale not only provides for satisfaction of the Cargill claim but also of a portion of the subordinate claim on the Ohio Property held by Kalmbach. Without the sale, no funds would be available to Kalmbach on account of its subordinate mortgage.

## The Sale Price is Fair and Reasonable

25. The Sale to Purchaser represents the highest and best price for the Ohio Property secured by the Debtor to date. In the Debtor's view, the Purchase Agreement represents substantial value to the Debtor's estate and provides favorable terms for disposition of the Ohio Property in exchange for fair and reasonable consideration. *See, Mellon Bank N.A. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1992); *See, also, Mellon Bank N.A. v. Official Comm. Of Unsecured Creditors*, 92 F.3d 139 (3d) Cir. 1996).

## ASSET SALE FREE AND CLEAR OF ENCUMBRANCES

26.  The Debtor seeks approval to sell its Ohio Property, free and clear of any and all liens, claims or encumbrances, but subject to the Assumed Leases, in accordance with §363(f) of the Bankruptcy Code. A debtor-in-possession may sell property to §§363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions are satisfied:

(i)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(ii)    such entity consents;

(iii)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv) such interest is in bona fide dispute; or

(v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

27.     Whatever final price is achieved here, the proceeds will be distributed to in accordance with the priority under the Bankruptcy Code, with the liens of the secured creditors to be taken into consideration with respect thereto.

28.     In addition to the attached service list, the Debtor is providing notice of this sale to six (6) local farmers who we are advised may entertain an interest in the Ohio Property.

## WAIVER OF STAY PERIODS

29.     To preserve the value of the Debtor's estate and expedite the closing of the transactions contemplated by the Purchase Agreement, it is important that the Debtor be allowed to close the Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtor hereby requests that the Court waive the fourteen (14) day stay periods under Bankruptcy Rules 6004(h) and 6006(d), or in the alternative, if an objection to this Motion is filed, reduce the stay period to the minimum amount of time reasonably required by the objecting party to file its appeal.

## NOTICE

30.     Notice of this motion and the exhibits hereto are being served upon all of the Debtor's creditors, the Debtor's secured creditors and/or their counsel, if known, those parties who have filed Notices of Appearance and the Office of the United States Trustee.  Notice of the sale is also being served upon the six (6) local farmers set forth in the list attached hereto.

## CONCLUSION

31.     The Debtor submits that a sale of Ohio Property on the terms set forth in the Purchase Agreement is a sound and prudent exercise of its business judgment.  The sale to Purchaser, or such other entity or entities as may submit a higher and better offer for the Ohio Property at a hearing to consider the Sale, will maximize the value of the Ohio Property and the ability to satisfy creditor claims.

32.     No prior application for the relief sought herein has been made to this or any other court.

{00523175.DOC;2 }460686

**WHEREFORE**, the Debtor seeks the entry of an order authorizing the Debtor to sell the

Ohio Property as defined in the Purchase Agreement free and clear of any and all claims, liens,

encumbrances and other interests thereon, except for the Assumed Leases, subject to higher and

better offers; and granting to the Debtor such other and further relief as is just and appropriate.

**DATED:**  New York, New York
         March 18, 2011

> **ROBINSON BROG LEINWAND GREENE**
>  **GENOVESE & GLUCK P.C.**
> **Attorneys for the Debtor**
> 875 Third Avenue, 9th Floor
> New York, New York 10022
> Tel. No.: (212) 603-6300
>
> By: /s/ A. Mitchell Greene

# PURCHASE AGREEMENT

**THIS PURCHASE AGREEMENT**, dated as of March __, 2011 by and between JURGIELEWICZ DUCK FARM, a New York general partnership ("Seller") and CHAD REYNOLDS ("Purchaser").

## RECITALS

**WHEREAS**, Seller filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (as defined below) on January 12, 2010 and since that time Seller has remained in possession of its property and has continued to operate its business pursuant to Sections 1107 and 1108 of the Bankruptcy Code; and

**WHEREAS** Seller's Chapter 11 case is currently pending before the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") in re **Jurgielewicz Duck Farm, Case No. 10-70231 (DTE)** (the "Bankruptcy Case"); and

**WHEREAS**, Purchaser desires to purchase, and Seller desires to sell, the Property (as hereinafter defined) upon the terms and subject to the conditions set forth in this Agreement, and pursuant to sections 105, 363 and 365 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein (the receipt and sufficiency of which are hereby acknowledged) and in reliance upon the representations and warranties contained herein, the parties hereto covenant and agree as follows:

## ARTICLE 1

## CERTAIN DEFINITIONS

As used in this Agreement, the following terms shall have the following designated meanings:

"Affiliate" as applied to any Person, means any Person controlling, controlled by or under common control with such Person. For the purposes of this Agreement "control" shall include, without limitation, the ownership of 50% or more of the outstanding equity or ownership interests, including, without limitation, limited partnership interests, in another entity.

"Agreement" means this Purchase Agreement, including the exhibits and the schedules attached hereto.

"Authorized Officer" of any Person means the chief executive officer, the president or any vice president or secretary of such Person who has been authorized by requisite action to act on behalf of such Person.

"Bankruptcy Case" has the meaning set forth in the recitals hereof.

"Bankruptcy Code" means Title 11 of the United States Code, as amended from time to time.

"Bankruptcy Court" has the meaning set forth in the recitals hereof.

"Business Day" means any day other than a Saturday or Sunday or any day on which banks in New York, NY are not open for business.

"Closing" has the meaning set forth in Article 3.1 hereof.

"Closing Date" means the date of consummation of the transactions contemplated by this Agreement which shall be no more than five (5) days after the date of entry of the Sale Order.

"Execution Date" means the date first written above.

"Governmental Authority" means any federal, provincial, state, regional or municipal government or other political subdivision thereof and any entity or Person of competent jurisdiction exercising executive, legislative, judicial, regulatory or administrative functions of, or pertaining to government.

"Leases" shall mean those leases in effect as of the date of this Agreement with respect to the Property, as more fully described in Exhibit B attached hereto,

"Liens" has the meaning set forth in Article 6.5 hereof.

"Person" means any natural person, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, trust, union, association, court, agency, government, tribunal, instrumentality, or other entity or authority.

"Property" means those certain parcels of real estate, together with improvements constructed thereupon located at Montgomery Township, Wood County, Ohio and as more fully described in Exhibit A attached hereto (consisting of 4 pages).

"Purchase Price" has the meaning set forth in Article 2.2 hereof.

"Required Consents" means all consents (if any) required under the Leases for the assignment and transfer to Buyer of the Leases and all consents (if any) of any other Person required for the assignment and transfer to Buyer of the Property and the consummation of the transactions contemplated hereby.

"Sale Hearing" means the hearing of the Bankruptcy Court related to the approval of the proposed sale of the Property by Seller.

"Sale Motion" means the motion to be filed with the Bankruptcy Court seeking approval of the sale of the Property to Purchaser.

"Sale Order" means the order to be entered by the Bankruptcy Court pursuant to Sections 363 of the Bankruptcy Code authorizing the sale of the Property to Purchaser.

## ARTICLE 2

## THE TRANSACTION

ARTICLE 2.1 <u>Purchase and Sale of the Property</u>. On the terms and subject to the conditions contained in this Agreement and the Sale Order, on the Closing Date, Purchaser shall purchase from Seller and Seller shall sell, convey, assign, transfer and deliver to Purchaser, free and clear of all Liens, all of Seller's right, title and interest in and to the Property.

ARTICLE 2.2 <u>Purchase Price</u>. On the Closing Date, as consideration for the Property, Purchaser agrees to pay to Seller the sum of $515,000 in cash (the "Purchase Price").

ARTICLE 2.3 <u>Payment of Taxes</u>. The Seller shall be liable for and shall pay all applicable federal, provincial, state and city sales taxes, excise taxes and all other taxes, duties and other like charges properly payable on and in connection with the conveyance and transfer of the Property to the Purchaser.

ARTICLE 2.4 <u>Breakup-Fee Bid Protection</u>. If this Agreement is terminated by the Seller, other than (i) as a result of a breach of this Agreement by the Purchaser, or (ii) where the Purchaser has failed to fulfill a condition in favor of the Seller, and either the Seller or its representative or permitted assigns either (x) enters into an agreement within 120 days of such termination to sell the Property to a Person other than the Purchaser and that Person is not an Affiliate or designate of the Purchaser, or (y) the Bankruptcy Court shall enter an order authorizing the sale of the Property to a Person other than the Purchaser and that Person is not an Affiliate or designate of the Purchaser

and such sale subsequently closes, then the Seller agrees, subject to Bankruptcy Court Approval, to pay to the Purchaser on closing of such sale an amount equal to the actual out of pocket expenses of the Purchaser incurred in connection with this Agreement, including without limitation, its legal and other professional fees up to three percent (3%) of the purchase price paid pursuant to such agreement, to a maximum amount of $10,000 (the "Breakup-Fee"). The foregoing Breakup-Fee is without derogation to any other rights and claims the Purchaser may have, all of which are hereby specifically preserved by the Purchaser.

## ARTICLE 3

## THE CLOSING

ARTICLE 3.1 <u>Time and Place of Closing</u>. The consummation of the transactions provided for in this Agreement (the "Closing") shall take place at Bowling Green Title Agency, 344 S. Main Street, Bowling Green, Ohio on the Closing Date, but subject to satisfaction of all of the conditions to Closing set forth in Article 5 and elsewhere in this Agreement. Closing shall occur not later than June 3, 2011.

ARTICLE 3.2 <u>Deliveries by Seller</u>. At the Closing, Seller shall deliver to Purchasers the following:

> a. the Sale Order in a form reasonably satisfactory to Purchaser's legal counsel;

> b. a general warranty deed conveying the Property;

> c. all keys to all locks relating to the Property;

> d. a certificate executed by the Seller certifying that the representations and warranties of the Seller are true and correct in all material respects at the time of Closing;

> e. any other instruments (either executed counterparts or otherwise) reasonably required to permit the due transfer of the Property, free and clear of all Liens, each in form and substance reasonably satisfactory to Purchaser; and

ARTICLE 3.3 <u>Deliveries by Purchasers</u>. At the Closing, Purchaser shall deliver the following:

> a. the Purchase Price;

b. any other instruments (either executed counterparts or otherwise) for the due transfer of the Property to Purchaser, free and clear of all Liens, each in form and substance reasonably satisfactory to Seller;

c. a certificate of an officer of each Purchaser certifying that all representations and warranties contained herein are true and correct.

ARTICLE 3.4 Possession. Seller shall deliver possession of, and Purchaser shall have the right to take possession of the Property, upon Closing. Seller and its agents, employees and other representatives have not and do not make any representations or warranties, express or implied, to Purchaser regarding the fair market value, physical condition or environmental condition of the Property, and Purchaser acknowledges, represents and warrants to Seller that Purchaser has not been induced to execute this Agreement by any act, statement or representation of Seller or its agents, employees or other representatives not expressly set forth in this Agreement.

# ARTICLE 4

# CONDITIONS TO SELLER'S OBLIGATIONS

Seller's obligation to consummate the transaction contemplated by this Agreement is subject to the satisfaction at or prior to the Closing Date of each of the following conditions:

ARTICLE 4.1 Representations, Warranties and Covenants. All representations and warranties of Purchaser contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date, as if such representations and warranties were made at and as of the Closing Date and Purchaser shall have performed all agreements and covenants required by this Agreement to be performed by it prior to or at the Closing Date in all material respects.

ARTICLE 4.2 No Litigation. There shall be no litigation or proceedings pending or threatened in writing by any Person against the Seller or the Purchaser for the purpose of enjoining, preventing or restraining the completion of the transactions contemplated by this Agreement, except for the Bankruptcy Case and other than listed in the bankruptcy schedules and other related documents filed with this Court.

ARTICLE 4.3 Sale Order. The Bankruptcy Court shall have entered the Sale Order.

Each of the preceding conditions shall be satisfied and may be waived by Seller, but only if such waiver is set forth in a writing executed by Seller, which may be done without further order of the Bankruptcy Court, if permitted by law, and without notice to any other Person. If any of the preceding conditions shall not be satisfied, and is not waived by Seller, Seller may terminate this Agreement.

## ARTICLE 5

## CONDITIONS TO PURCHASERS' OBLIGATIONS

Purchaser's obligation to consummate the transaction contemplated by this Agreement is subject to the satisfaction at or prior to the Closing Date of each of the following conditions.

ARTICLE 5.1 <u>Representations, Warranties and Covenants</u>. All representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date as if such representations and warranties were made at and as of the Closing Date and Seller shall have performed all agreements and covenants required by this Agreement to be performed by it prior to or at the Closing Date in all material respects.

ARTICLE 5.2 <u>No Litigation</u>. There shall be no litigation or proceedings pending or threatened in writing by any Person against the Seller or the Purchaser for the purpose of enjoining, preventing or restraining the completion of the transactions contemplated by this Agreement, except for the Bankruptcy Case and other than listed in the bankruptcy schedules and other related documents filed with this Court.

ARTICLE 5.3 <u>Sale Order</u>. The Bankruptcy Court shall have entered the Sale Order.

ARTICLE 5.4 <u>Title to Property</u>. Seller shall deliver good and marketable title to the Property, free and clear of all Liens and interests.

ARTICLE 5.5 <u>Closing Deliveries</u>. The deliveries required by Article 3.2 hereof shall have been delivered.

ARTICLE 5.6 <u>Material Damage</u>. No material damage by fire or other hazard to the assets or business of the Seller shall have occurred prior to the Closing.

Each of the preceding conditions shall be satisfied and may be waived by Purchaser, but only if such waiver is set forth in a writing executed by Purchaser or if Purchaser closes the transaction with respect to such Property. If one of the preceding

conditions shall not be satisfied and is not waived by Purchaser (or deemed waived by Purchaser's closing the transaction), Purchaser may terminate this Agreement and shall have no further liability to the Seller.

# ARTICLE 6

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchasers as follows:

ARTICLE 6.1 <u>Due Incorporation, Etc</u>. Seller is a general partnership validly existing and in good standing under the laws of the jurisdiction of its incorporation and, subject to any required approval of the Bankruptcy Court, has the corporate power and authority and all necessary governmental approvals to own, lease and operate its properties and to carry on its business as it is now being conducted or presently proposed to be conducted.

ARTICLE 6.2 <u>Authorization, No Conflicts, Etc</u>. Subject to the entry and effectiveness of the Sale Order, (a) Seller has the power and authority to enter into this Agreement and to carry out its obligations hereunder, (b) the execution, delivery and performance of this Agreement by Seller and the consummation by the Seller of the transactions contemplated thereby have been duly authorized by all requisite corporate action and (c) this Agreement has been duly and validly executed and delivered by Seller and (assuming this Agreement constitutes a valid and binding obligation of the Purchaser) subject to Bankruptcy Court Approval constitutes a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditor's rights generally from time to time in effect and to general equitable principles.

ARTICLE 6.3 <u>Consents and Approvals</u>. No consent, approval or authorization of, or declaration, filing, or registration with, any United States federal or state governmental or regulatory authority is required to be made or obtained by Seller in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, except (a) for consents, approvals, or authorizations of, or declarations or filings with, the Bankruptcy Court, and (b) for consents, approvals, authorizations, declarations, filings or registrations, which, if not obtained, would not, individually or in the aggregate, have a material adverse effect on the transactions contemplated by this Agreement.

ARTICLE 6.4 <u>Litigation</u>. Except for the Bankruptcy Case and the litigations set forth on the Debtor's Statement of Financial Affairs, to Seller's knowledge, there are

no circumstances or facts that would prevent Seller from engaging in the transaction contemplated in this Agreement.

ARTICLE 6.5 <u>Property</u>. At closing, (a) subject to entry of the Sale Order by the Bankruptcy Court, the Property shall be sold to the Purchaser, free and clear of all liens, security interests and encumbrances with the exception of the Leases (collectively "Liens") and, (b) Seller shall be the owner of the Property with the ability to convey such assets to the Purchaser. At closing, the Purchaser shall assume the Leases effective as of the Closing Date.

# ARTICLE 7

## CLOSING EXPENSES; TAX PRO-RATION

ARTICLE 7.1 <u>Seller's Closing Expenses</u>. Seller shall pay the following closing expenses:

a. the conveyance fee payable to the Wood County, Ohio auditor;
b. any necessary survey costs;
c. one half (1/2) of the fee charged by the closing agent, Bowling Green Title Agency;
d. the cost of deed preparation, not to exceed $50.00

ARTICLE 7.2 <u>Purchaser's Closing Expenses</u>. Purchaser shall pay the following closing expenses:

a. the cost of recording the deed and Purchaser's mortgage, if any;
b. any closing expenses charged or required by Purchaser's lender;
c. one half (1/2) of the fee charged by the closing agent, Bowling Green Title Agency

ARTICLE 7.3 <u>Real Estate Taxes</u>. All real estate taxes relating to the Property which accrue through the date of closing shall be paid by the Seller. The Wood County Lien Method of real estate tax pro-ration shall be utilized by the closing agent.

# ARTICLE 8

## BANKRUPTCY COURT APPROVAL

ARTICLE 8.1 In accordance with the applicable provisions of the Bankruptcy Code the Seller will make application to the Bankruptcy Court for authority to implement this agreement and to obtain a Sale Order.

## ARTICLE 11

ARTICLE 11.1 **AS IS. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED HEREIN, THE PROPERTY IS BEING SOLD AND TRANSFERRED TO PURCHASER ON AN "AS IS" AND "WHERE IS" BASIS AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR USE, ARE EXCLUDED FROM THE SALE AND TRANSFER OF THE PROPERTY. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY NATURE WITH RESPECT TO THE PROPERTY OTHER THAN AS EXPRESSLY PROVIDED FOR HEREIN.**

## ARTICLE 12

## MISCELLANEOUS

ARTICLE 12.1 Termination. This Agreement may be terminated and the transactions contemplated hereby may be abandoned at any time, but not later than the Closing Date:

      a.  by mutual consent of Purchaser and Seller;

      b.  by Purchaser or Seller if Purchaser or Seller, as the case may be, is in breach of this Agreement or has failed to satisfy any condition to Closing in Article 5 hereof that Purchaser or Seller or their respective affiliates were required to satisfy and that the said default has not been remedied or the condition has not been waived or the allotted time for satisfaction of such conditions has not been extended, as provided in this Agreement;

      c.  by Purchaser or Seller if the Bankruptcy Court shall not have approved the Sale Order on or before May 20, 2011; or

      d.  the earlier of (A) three (3) business days after the Closing to a purchaser other than Purchaser and (B) thirty-one (31) days after the Sale Hearing.

In the event of the termination of this Agreement as above provided, except as a result of a default by Purchaser or Seller and except for any willful breach by any party hereto of such party's representations, warranties or covenants, (i) this Agreement shall

immediately become void, (ii) each party shall bear its own expenses which shall also survive the termination of this Agreement. In the event that a condition precedent to its obligation is not met, nothing contained herein shall be deemed to require any party to terminate this Agreement rather than to waive (without further Bankruptcy Court order or notice to any Person) such condition precedent and proceed with the Closing.

ARTICLE 12.2 <u>Risk, Casualty and Condemnation</u>. Until Closing, the Property shall remain at the risk of the Seller and the Seller shall hold all existing, required and/or necessary insurance policy or policies in effect on the Property and the proceeds in trust for itself, the Purchaser and all other Persons with an interest in the Property as their respective interests may appear.

12.2.1 In the event of damage to a material portion of the Property prior to the time of Closing, Seller shall immediately notify Purchaser of such event and the Purchasers may, at their option:

(a) complete the transactions contemplated herein without reduction of the Purchase Price in which event all proceeds of insurance or compensation shall be payable to the Purchaser;

or

(b) rescind this Agreement without penalty in which case, the Purchaser and the Seller shall have no further rights or remedies against each other.

12.2.2 In the event of nonmaterial damage to the Property that is otherwise uninsured, which damage Seller is unwilling to repair prior to Closing, Purchaser shall be entitled to a reduction in the Purchase Price to the extent of the cost of repairing such damage, as reasonably agreed to by the parties.

ARTICLE 12.3 <u>Successors and Assigns</u>. This Agreement will inure to the benefit of and be binding upon the successors and assigns of each of the parties hereto and their respective successors and assigns.

ARTICLE 12.4 <u>Assignment</u>. The parties hereto may not assign any of its duties or obligations hereunder without the prior written consent of the other, which consent shall not be unreasonably withheld.

ARTICLE 12.5 <u>Default and Remedies</u>. Subject to the remedy limitations contained elsewhere in this Agreement, in the event of a default hereunder by Seller, Purchaser may (i) cancel this Agreement by written notice to Seller or (ii) proceed with whatever steps Purchaser deems necessary in order to enforce its rights and remedies

under this Agreement, at law or in equity including, without limitation, the right, subject to Bankruptcy Court Approval, to payment of the Breakup-Fee and to seek specific performance.

In the event of a default hereunder by Purchaser, Seller may (i) cancel this Agreement by written notice to Purchaser and/or (ii) proceed with whatever steps Seller deems necessary in order to enforce its rights and remedies under this Agreement, at law or in equity including, without limitation, the right to seek specific performance or recover monetary damages for the breach of this Agreement. Subject to the remedy limitations contained in this Agreement, no remedy herein or otherwise conferred upon Seller or Purchaser shall be considered exclusive of any other remedy, but the same shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute.

ARTICLE 12.6 <u>Notices</u>. All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered personally or mailed, by certified or registered mail, return receipt requested, first class postage prepaid, or by Federal Express or some other reputable overnight carrier, to the parties at the following addresses:

| If to Purchaser: | Chad Reynolds<br>Emerson Road<br>Wayne, OH 43466 |
| --- | --- |
| With a copy to: | James A. Hammer, Esq.<br>112 East Oak Street<br>Bowling Green, OH 43402 |
| If to the Seller: | Jurgielewicz Duck Farm<br>Barnes Road – Box 68<br>Moriches, NY 11681 |
| With a copy to: | Robinson Brog Leinwand Greene Genovese<br>& Gluck P.C.<br>875 Third Avenue, 9th Floor<br>New York, New York 10022 |

or to such other place and with such other copies as any party may designate by written notice to this other party.

ARTICLE 12.7 <u>Expenses</u>. Except as otherwise provided in this Agreement, including without limitation Article 7 herein, each party hereto shall pay its own expenses, including attorneys' and accountants' fees, in connection with this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby. Notwithstanding the foregoing, if any action is brought by either party against the other party, the prevailing party shall be entitled to recover court costs incurred and reasonable attorneys' fees and costs.

ARTICLE 12.8 <u>Brokerage Commissions and Fees</u>. Purchaser warrants and represents that it has not engaged any broker(s), in connection with the transactions contemplated by this Agreement, and agrees that should any claim be made for commissions or fees by any broker(s) claiming through Purchaser against Seller, Purchaser will indemnify and hold the Seller free and harmless from and against any and all loss, liability and expenses in connection therewith. Seller warrants and represents that it has not engaged any broker(s), in connection with the transactions contemplated by this Agreement, and agrees that should any claim be made for commissions or fees by any broker(s) claiming through Seller against Purchaser, Seller will indemnify and hold the Purchaser free and harmless from and against any and all loss, liability and expenses in connection therewith. Notwithstanding anything contained herein to the contrary, the provisions of this Article 12.8 shall survive Closing.

ARTICLE 12.9 <u>Entire Agreement</u>. This Agreement supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof and this Agreement, including the schedules and exhibits hereto, and other documents to be delivered in connection herewith (together with such confidentiality letter), contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof.

ARTICLE 12.10 <u>Waiver</u>. Any term or condition of this Agreement may be waived at any time by the party which is entitled to the benefit thereof. To be effective, each such waiver shall be in writing, shall specifically refer to this Agreement and the term or condition being waived, and shall be executed by an Authorized Officer of such party. A waiver on one occasion shall not be deemed to be a waiver of the same or any other breach on a future occasion. A waiver hereunder shall be effective without an order of the Bankruptcy Court, or notice to the Bankruptcy Court or any Person, in relation to such waiver.

ARTICLE 12.11 <u>Amendment</u>. This Agreement may be modified or amended only in a writing duly executed by or on behalf of each of the parties hereto.

ARTICLE 12.12 <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

ARTICLE 12.13 <u>Invalid Provisions</u>. If any provision of this Agreement is held to be illegal, invalid, or unenforceable under any present or future law, rule, or regulation, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof. The remaining provisions of this Agreement shall remain in full force and effect, and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance here from. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as a part of this Agreement a legal, valid, and enforceable provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible.

ARTICLE 12.14 <u>Headings, Gender, Etc</u>. The headings used in this Agreement have been inserted for convenience and do not constitute matter to be construed or interpreted in connection with this Agreement. Unless the context of this Agreement otherwise requires, (a) words of any gender shall be deemed to include each other gender, (b) words using the singular or plural number shall also include the plural or singular number, respectively, (c) references to "hereof," herein," "hereby" and similar terms shall refer to this entire Agreement, and (d) each reference to Seller shall be a reference to any of its subsidiaries and predecessors and each representation, warranty, covenant and other agreement made herein with respect to Seller shall be deemed made with respect to all such subsidiaries and predecessors. The language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent and no rule of strict construction shall be applied against any Person.

ARTICLE 12.15 <u>Continuing Jurisdiction</u>. The parties agree that the Bankruptcy Court shall retain jurisdiction over the enforcement of this Agreement including, but not limited to, the performance of the obligations and transactions contemplated hereunder.

ARTICLE 12.16 <u>Choice of Law</u>. This Agreement shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of New York, without regard to conflicts of laws principles thereof, except with respect to matters of law concerning the internal corporate affairs of any corporation which is a party to or the subject of this Agreement, and as to those matters the law of the jurisdiction of incorporation or organization of such entity shall govern. The parties agree that venue for any suit, action, proceeding or litigation arising out of or in relation to this Agreement shall be in any federal or state court in the State of New York having subject matter jurisdiction.

ARTICLE 12.17 <u>No Third Party Beneficiary</u>. Nothing herein expressed or implied is intended or shall be construed to confer upon or give to any Person, firm or corporation, other than the parties hereto and their respective permitted successors and assigns, any rights or remedies under or by reason of this Agreement.

**IN WITNESS WHEREOF**, each of the parties hereto has caused this Agreement to be duly executed as of the day year first above written.

*Purchaser*

_____

*Seller*

JURGIELEWICZ DUCK FARM

_____

# COMMERCIAL LEASE AGREEMENT

THIS AGREEMENT is effective as of the 1st day of October, 2010, by and between JURGIELEWICZ DUCK FARM, a New York partnership (hereinafter "Lessor"), and COUAK CAPITAL CORP., a New York corporation (hereinafter "Lessee").  Lessor and Lessee contract and agree as follows:

1.     Lessor hereby leases unto Lessee the following land and any improvements thereon (hereinafter "the leased property"):  the duck grow out buildings and adjoining/adjacent land located at 10111 McCutcheonville Road, Wayne, Ohio.

2.     The term of this lease shall be for a primary term of three (3) years, commencing on May 1, 2011, and expiring at midnight on April 30, 2014, unless extended as provided for herein.  This lease can be extended at the end of the primary term for an additional term of two (2) years by Lessee giving Lessor notice of his intent to extend the lease thirty (30) days prior to the expiration of the primary term.

3.     During the primary term, Lessee shall pay to Lessor, as rental, the sum of Six Thousand Dollars ($6,000.00) per year, in advance, on or before April 30th of each year.  During any extended term, Lessee shall pay to Lessor, as rental, the sum of Seven Thousand Dollars ($7,000.00) per year, in advance, on or before April 30th of each year.

4.     The leased property may be used for the following purposes and for no other purposes:  the hatching and raising of poultry.

5.

   (A)     Indemnity:  Lessor and Lessee shall indemnify and save harmless the other from any and all losses, fines, suits, damages, expenses, claims, demands and actions of any kind resulting from their negligence, breach, or violation or non-performance of any condition hereof.

   (B)     Insurance:  Lessee shall, during the entire term of the Lease keep in full force and effect a policy of public liability insurance with respect to the Property and the business operated by Lessee in the Property and which the limits of general liability shall be in the amount of One Million Dollars ($1,000,000) combined single limit, naming Lessor as additional insured.  Such coverage shall include a broad form general liability endorsement.  The policy shall contain a clause that the Lessee will not cancel or change the insurance without first giving the Lessor ten (10) days prior written notice.

   Lessor shall during the term hereof, at it's sole expense, provide and keep in force insurance on the building against loss or damage by fire and extended coverage, in an amount equal to one hundred percent (100%) of the full insurable value thereof, which insurance shall be placed with an insurance company or companies approved by Lessor and licensed to do business in the state wherein lay the leased premises.  The term "full insurable value" shall mean actual replacement value of the building (exclusive of costs of excavation, foundations and footing below ground level).  The insurance required under this paragraph shall be carried in the name of the Lessor and Lessee and shall provide that any proceeds thereunder shall be paid to Lessor and Lessee and any applicable mortgage holder, according to their respective interests.

   Duplicate originals or certificates of insurance of the policies provided shall be furnished by Lessor and Lessee to each other and shall contain an agreement by the insurer that such policy or policies shall not be canceled without at least ten (10) days prior notice to the Lessor and Lessee.

   Lessee shall pay all taxes assessed against all personal property located on the premises and shall also pay all privilege, excise and other taxes duly assessed.  Lessee shall pay said taxes when due so as to prevent the assessment of any late fees or penalties.

6.     Lessee shall pay for all water, electricity, and other utilities used on the premises.

7.

    (A)    Lessor's Repairs:  Lessor shall be solely responsible for maintaining the roof, foundation and exterior of the building and all parking areas in good repair for their intended use.

    (B)    Other Repairs:  All repairs, maintenance, replacement or reconstruction to the interior of the portion of the building leased by Lessee, including but not limited to replacement of glass doors and windows and repair of the plumbing, are to be made by Lessee at Lessee's expense.  If Lessee fails to make such repairs or replacements promptly or within fifteen (15) days of occurrence, Lessor may, at its option, make such repairs or replacements and Lessee shall repay the costs thereof to Lessor on demand.

8.    Lessee will keep the leased property in a clean and wholesome condition and will comply at all times with all lawful health and police regulations.

Lessee shall promptly comply with all of the ordinances of the Town of Wayne, Ohio, or of any other governmental body applicable for said premises and to all ordinances and requirements enforced by the state board of health, sanitary, fire or police departments of the Town of Wayne for the correction, prevention and abatement of nuisances in and about or connected with the Property because of Lessee's use thereof during the term of this Agreement, all at Lessee's expense.  Lessee shall provide for the removal of its own trash, waste paper, boxes and cartons and shall not permit any accumulation of such materials. Lessee shall not engage in any act which shall constitute a nuisance.

9.    If Lessee shall make default in the payment of the rent, or any part thereof or any other sums due under the terms hereof, when due as herein provided, or in any of the other covenants, agreements, conditions or undertakings herein contained, and such default shall continue for thirty days after notice thereof in writing to Lessee, or if (a) any proceeding under the bankruptcy act of the United States is begun by or against the Lessee, and an order of adjudication, or order approving the petition, be entered in such proceedings, or (b) a receiver or trustee is appointed for substantially all of the Lessee's business or assets, or (c) if Lessee shall make an assignment for the benefit of creditors, or (d) if Lessee shall vacate or abandon the leased property, then, and in any such event, it shall be lawful for the Lessor, at his election, to declare the term hereof ended and to re-enter the leased property, and to repossess and enjoy the said premises and any buildings and improvements situated thereon without such a re-entry and repossession working a forfeiture of the rents to be paid and the covenants to be performed by the Lessee during the full term of this agreement.  If any default shall be made in any covenant, agreement, condition, or undertaking which cannot with due diligence be cured within a period of 30 days, and if notice thereof in writing shall have been given to the Lessee, and if the Lessee, prior to the expiration of 30 days from and after the giving of such notice, shall commence to satisfy the cause of such default and shall proceed diligently and with reasonable dispatch to take all steps and do all work required to cure such default, then the Lessor shall not have the right to declare said term ended by reason of such default; provided, however, that the curing of any default in such manner shall not be construed to limit or restrict the right of Lessor to declare the said term ended and enforce all of their rights and remedies hereunder for any other default not so cured.

The foregoing provision for the termination of this lease for any default in any of its covenants shall not operate to exclude or suspend any other remedy of the Lessor for breach of any of said covenants, or for the recovery of said rent for the full term, and in the event of the termination or default in any of the terms of this lease as aforesaid.

10.    Lessee shall permit Lessor and his agents to enter the Property at all reasonable times for any of the following purposes to inspect the same: (i) to maintain the building in which the said premises are located, (ii) to make repairs to the Property as the Lessor is obligated or may elect to make, and (iii) to post notices of non-responsibility for alterations or additions or repairs.

11.    If Property, including improvements thereon, are injured by fire or other casualty, Lessee shall have the exclusive right and option to either terminate this Agreement or reconstruct and/or repair the said damaged improvements and continue this Lease under its terms and conditions as if no such casualty occurred by

giving written notice to Lessor of Lessee's intention to so continue this Lease within thirty (30) days after the date of said damage or casualty. In the event that Lessee so elects to continue this Lease, any insurance proceeds payable as a result of said fire or casualty shall be first applied to pay the reconstruction or repair of said improvements, and any balance of such insurance proceeds after payment of said reconstruction or repair shall be paid to whoever owns the insurance policy under which payment is made.

12. If, during the term of this Agreement, the Property shall be taken or condemned, either in whole or part, by competent authorities for public or quasi-public use, Lessee shall have the option to terminate this Agreement as of the date of taking. If Lessee elects not to terminate this Agreement, then this Agreement shall continue in full force and effect.

13. It is understood and agreed that the relationship of the parties hereto is strictly that of Lessor and Lessee and that the Lessor has no ownership in the Lessee's enterprise and the Agreement shall not be construed as a joint venture or partnership. The Lessee is not and shall not be deemed to be an agent or representative of the Lessor.

14. All covenants, conditions and agreements and undertakings contained in this Agreement shall extend to and be binding on the respective heirs, successors and assigns of the respective parties hereto the same as if they were in every case named and expressed.

15. It is further understood and agreed by and between the Lessor and Lessee that, on account of breach or default by either party of any of their obligations hereunder, it shall become necessary for the other party to employ and/or consult with an attorney to give advice, or to enforce or demand any of either party's rights or remedies hereunder, then, and in any such event, the defaulting or breaching party shall pay all attorney fees, court costs and other expenses occasioned by such default(s) or breach(es).

16. Written notice to Lessor, all rent checks and all notices from Lessee to Lessor shall be served or sent to:

Jurgielewicz Duck Farm
PO BOX 68
Moriches, New York 11955

Until further written notice to Lessor, all notices from Lessor to Lessee shall be served or sent to Lessee at the following address:

Couak Capital Corp.
445 Park Avenue 9th Fl
New York, NY 10022

All notices to be given under this Agreement shall be in writing and shall be served personally or sent by United States certified or registered mail.

17. This Agreement contains all of the agreements and conditions made between the parties hereto and may not be modified orally or in any other manner other than by agreement in writing signed by all parties hereto or their respective successors in interest.

18. If any section, paragraph, sentence or portion of this Agreement or the application thereof to any party or circumstance shall, to any extent, be or become invalid or illegal, such provision is and shall be null and void, but, to the extent that said null and void provisions do not materially change the overall agreement and intent of this entire agreement, the remainder of this Agreement shall not be affected thereby and each remaining provision of this Agreement shall be valid and enforceable to the fullest extent provided by law.

19. This Agreement shall be governed in accordance with the laws of the State of Ohio. The parties hereto irrevocably waive their right to a jury trial.

20.     Lessee shall have the right to make such alterations and improvements to the Property as it deems necessary or desirable upon giving written notice of same to Lessor. Such alterations and improvements shall comply with all applicable construction laws and regulations and shall conform generally with the existing improvements on the Property. The Lessee shall keep the Property free from any and all liens arising out of the work performed or materials furnished in making such improvements.

21.     Additional Provisions:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

* * *

WITNESS the parties hereto have affixed their signatures as of the date first written above.

LESSOR:                                              LESSEE:

_____          _____

By: _____          By: _____
Title: _____          Title: _____

# CASH LEASE OF FARM LAND

THIS LEASE is entered into effective as of the 1st day of October 2010, between JURGIELEWICZ DUCK FARM, a New York general partnership, as landlord, of PO BOX 68, MORICHES, NEW YORK 11955 and GARY REYNOLDS, tenant, of _____ WAYNE, OHIO _____.

1. The landlord hereby leases to the tenant, to use for agricultural purposes, the following-described property, located in Wood County, State of Ohio, consisting of approximately 140 acres, more or less, as more fully described in Exhibit A hereto.

2. The landlord reserves the right of himself, his agents, his employees, or his assigns to enter the farm at any reasonable time for purposes of (a) of consultation with the tenant; (b) of making repairs, improvements, and inspections; (c) of developing mineral resources; and (d) after notice of termination of the lease is given, none of which is to interfere with the tenant in carrying out regular farm operations.

3. The landlord does not convey to the tenant the right to lease or sublet any part of the land or buildings or to assign the lease to any person or persons whomsoever.

4. If the landlord should sell or otherwise transfer title to the land and buildings, he will do so subject to the provisions of this lease.

5. The terms of this lease shall be binding upon the heirs, executors, administrators, and successors of both the landlords and tenant in like manner as upon the original parties. However, in event the lease is for more than one year, the heirs or successors of the tenant shall have the option to give written notice of termination effective at the end of the lease year in which the death occurs.

6. The landlord warrants that he has the right to lease the land and buildings, and will defend the tenant's possession against any and all persons whomsoever.

7. To improve the land, conserve its resources, and maintain it in a high state of cultivation, the two parties agree as follows:

a. The tenant will maintain the land during his tenancy in as good condition as at the beginning, normal wear and depreciation and damages from causes beyond tenant's control excepted.

b. The tenant will operate the land in an efficient and husbandlike way.

c. The tenant will not, without oral consent of the landlord, cut live trees for sale or personal use.

d. The tenant will use fertilization practices which will prevent depletion of the essential plant food elements in the soil.

9. The tenant agrees to pay to the landlord as cash rent ("Rent") an amount equal to fifteen (15%) percent of tenant's net revenues (ie. gross revenues less expenses) derived from

1

the farming of the land and such payment will be made as of September 30th of each year during the term of this lease. Failure to pay the Rent when due shall constitute a breach of this Lease.

10. The term of this lease shall be three (3) years(s) from October 1, 2010, to September 30, 2013, and this lease shall continue in effect from year to year thereafter until written notice of termination is given by either party to the other at least three (3) months before expiration of this lease or any renewal. Notwithstanding the foregoing, if either party fails to carry out substantially the terms of this lease in due and proper time, this lease may be terminated by the other party by serving a written notice citing the instance(s) of breach and/or default and specifying a termination day of ten (10) days from the date of such notice.

11. The tenant agrees that he or his agent will possess the land and facilities continuously during the term of the lease. The tenant takes possession of the leased premises subject to the hazards of operating a farm, and assumes all risk of accidents personally as well as for family, employees, or agents in pursuance of farming operations, or in performing repairs on buildings, fences and other improvements.

12. The tenant agrees at the expiration or termination of this lease to yield possession of the premises to the landlord without further demand or notice, in as good order and condition as when they were entered upon by the tenant, loss by fire, flood, or tornado, and ordinary wear excepted. If the tenant fails to yield possession, the tenant shall pay to the landlord a penalty of $300 per day or the statutory double rent, whichever is less, for each day the tenant remains in possession thereafter, in addition to any damages caused by the tenant to the landlord's land or improvements, and said payments shall not entitle tenant to any interest of any kind or character in or on the premises.

13. A request for general review of the lease may be at least sixty days prior to the final date for giving notice to terminate this lease. Amendments and alterations to this lease shall be made in writing.

14. This lease shall not give rise to a partnership relationship, and neither party shall have the authority to obligate the other without written consent, except as specifically provided in this lease. The terms of this lease shall be binding on the heirs, executors, administrators and assigns of both landlord and tenant in like manner as upon the original parties.

15. Each party agrees that the other party shall in no way be responsible for the debts of, or liabilities for accidents or damages caused by the other party.

16. Willful neglect, failure, or refusal by either party to carry out any substantial provision of this lease shall give the other party the benefits of any proceedings provided by law.

17. Any differences between the parties as to their several rights and obligations under this lease that are not settled by mutual agreement after thorough discussion, shall be submitted for arbitration to a committee of three disinterested persons, one selected by each party hereto and the third by the two thus selected, and the committee's decision shall be accepted by both parties.

IN WITNESS WHEREOF, the parties have affixed their signatures effective as of the date first written above.

Witness

_____ (Landlord)

_____

_____

_____ (Tenant)

_____

_____

STATE OF _____

COUNTY OF _____

On _____, before me,
_____, Notary Public, personally appeared
_____, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacit(ies), and that by his/her/their signature(s) on the instrument, the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____                    (SEAL)
Notary Public


STATE OF _____

COUNTY OF _____

On _____, before me,
_____, Notary Public, personally appeared
_____, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacit(ies), and that by his/her/their signature(s) on the instrument, the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____                    (SEAL)
Notary Public